[S. F. No. 430. In Bank.—March 23, 1897.]

## CLAUS SPRECKELS ET UX., APPELLANTS, v. RUDOLPH SPRECKELS, RESPONDENT.

HUSBAND AND WIFE—COMMUNITY PROPERTY—HUSBAND'S OWNERSHIP—POWER OF GIFT—CONSTRUCTION OF CODE—CONSTITUTION AND LAW—AMENDMENT NOT RETROACTIVE. — Prior to the amendment of 1891 to section 172 of the Civil Code, forbidding the husband to give away community property without consent of the wife in writing, the code vested in the husband all of the elements of absolute ownership of the community property, to the exclusion of the wife, whose interest was a mere expectancy; and as to all the world except the wife, there was, prior to that amendment, no distinction between the community estate and the separate estate of the husband as respects the power of disposition, and the amendment of the code cannot be construed retroactively so as to deprive the husband of his vested right to dispose by gift of community property which was acquired prior to the amendment, without the written consent of the wife.

ID.—ACTION TO RECOVER COMMUNITY PROPERTY—MISJOINDER OF WIFE. The wife cannot be joined with the husband in an action to recover community property, without reference to the question of the wife's interest therein; and if she is so joined, a demurrer for misjoinder of parties should be sustained.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order dissolving an injunction. CHARLES W. SLACK, Judge.

The facts are stated in the opinion of the court.

*Delmas & Shortridge*, for Appellants.

*Rothchild & Ach*, for Respondent.

TEMPLE, J.—This is an appeal from a judgment entered upon demurrer to the complaint, and from an order dissolving an injunction. The plaintiffs are husband and wife, and sue to recover certain corporate stock. It is averred in the complaint that the plaintiffs intermarried July 11, 1852, and that on the thirty-first day of July, 1893, they owned the corporate stock, as community property, which on that day the plaintiff, Claus Spreckels, voluntarily, and without any consideration and without the consent of his wife, the other plaintiff, transferred as a gift to the defendant. The said Anna C. Spreckels has never consented in writing or otherwise to said transfer or gift. The complaint contains many other allegations, which, however, are not material to this discussion.

The complaint was demurred to on various grounds, and, among them, that the complaint does not state sufficient facts to constitute a cause of action, and there is a misjoinder of parties plaintiff, in that the wife is joined with her husband as plaintiff in an action to recover community property.

The first point made by the demurrer rests upon the assumption that the complaint shows that the stock became the community property of the plaintiffs prior to the passage of the amendment to section 172 of the Civil Code, which was made March 31, 1891. The complaint does not state when the stock was acquired, and, as this is a material question, it is contended that plaintiffs must be deemed to have stated their case as favorably to themselves as the facts would warrant, and, therefore, it must be held that the stock was acquired prior to that date. As appellant's counsel seem to acquiesce in this claim, I shall so consider it.

Prior to the amendment the section read as follows:

"The husband has the management and control of community property, with the like power of disposition (other than testamentary) as he has of his separate estate." The amendment consisted in adding the following: "Provided, however, that he cannot make a gift of such community property, or convey the same without a valuable consideration, unless the wife, in writing, consent thereto."

Respondent contends that the amendment cannot be held to apply to community property acquired prior to the amendment, nor to marriages entered into prior to that time. So construed, he contends it would deprive the husband of a vested proprietary right in the community property, to wit, the power to dispose thereof without the consent of his wife, and without a valuable consideration; and that it also impairs the obligation of a contract.

It is said that the law was at the time of the marriage that the husband had the management and control of the community property, with the like absolute power of disposition other than testamentary, as of his separate estate, and that this became a part of the contract by which the marriage was constituted, and to deprive the husband of this power is to impair the obligation of that contract.

To determine whether the amendment, if applicable to community property acquired prior to its passage, would deprive the husband of a vested right of property, it is necessary to consider what were the rights of husband and wife in the community property at the date of its passage.

The constitution does not mention community property, but does define what shall constitute the separate property of the spouses. (Const., art. XX, sec. 8.)

The Civil Code, section 161, provides that the husband and wife may hold property as joint tenants, tenants in common, or as community property. Then having defined separate property, it provides that all other property acquired after marriage by either hus-

band or wife, or both, is community property. Section 167 enacts that the community property is not liable for the debts of the wife contracted after marriage; section 168, that the earnings of the wife are not liable for the debts of the husband; and section 169, that the earnings and accumulations of the wife and of her minor children, who are in her custody, while she is living apart from her husband, are her separate property. Section 172 is the section now under consideration.

Section 682 of this code is: "The ownership of property by several persons is either: 1. Of joint interests: 2. Of partnership interests; 3. Of interests in common; 4. Of community interest of husband and wife." Section 687 again defines community property.

This court has held, after mature consideration, that upon the death of the husband the wife takes one-half of the community property as heir.

It has been held that the husband can make a gift of the community property to the wife, and convert it into her separate estate. To this it may be added that the wife, if possessed of business capacity, can obtain permission to carry on business in her own name as a sole trader, and that the profits of such business are her separate property.

Prior to the amendments of 1891 the code vested in the husband, with reference to the community property, all the elements of ownership, and in the wife none. If the rights of the parties in the community property are the same, then the law is partial to the wife. She can easily manage that all her earnings and accumulations shall be her separate property. The husband can in no way obtain a similar advantage. If the wife is living separate and apart from the husband, through her own fault, her earnings and accumulations are her own. Yet, if the husband during the same time accumulates a fortune, it is community property. There is no mode in which community property can be converted into his separate property.

As to all the world except the wife, there was, prior

to this amendment, no distinction between the community estate and the separate estate of the husband. If suit were brought upon a liability incurred in a business, the profits of which would be community property, and judgment recovered, execution could be levied upon the separate estate of the husband, and the debt entirely satisfied therefrom. His separate estate, during the entire marriage, is liable to be taken for community debts, and of course furnishes a credit in aid of community business. If the community loses, the loss may fall upon his separate estate, but his separate estate cannot profit by the success of the community.

The separate property of the wife is exempt from all these liabilities, but, on the other hand, the community property is liable for debts incurred by the husband in the management of his separate estate.

Now, all these differences point to the fact that the husband is the absolute owner of the community property. Therefore it is that his liabilities incurred in the management of the separate estate can be enforced against the common property, while those of the wife cannot be. And, therefore, she, under certain circumstances, can accumulate property which shall not belong to the community. If it went to the community it would belong to the husband, and under the circumstances it is not thought just that he should have it. He needs no corresponding privilege, because the community property is his as absolutely as is his separate estate. So he cannot convert it into his separate estate, and if the property belonged to the community, and the husband had only an agency, perhaps he could not give it to his wife.

Now, then, we have this state of the case: The statute provides that the husband and wife may hold property as community property. (Civ. Code, sec. 161.) It defines what shall constitute community property. It defines ownership (Civ. Code, sec. 654), and then gives to the husband complete legal ownership of the com-

munity property (Civ. Code, sec. 172), and confers upon the wife no element of ownership whatever.

Courts and counsel have occasionally endeavored to find some property right in the wife, or some respect in which the husband's interest falls short of full property. I think it will be universally admitted that so far there has been a complete failure in this respect. The first attempt shown by our reports of that kind is in *Godey* v. *Godey,* 39 Cal. 157. In that case it is said that while no other technical term so well defines the wife's interest as the phrase "a mere expectancy . . . . it is at the same time, . . . . so vested in her that [the] husband cannot deprive her of it by his will, nor voluntarily alienate it for the mere purpose of divesting her of her claim to it."

The testamentary power is not an essential incident to property, and depriving the husband of such power with reference to the community estate did not take from him any right of property. It was competent for the legislature to deny to the husband the right to dispose of his separate estate by will, and to provide that upon his death all should go to his widow subject to the payment of his debts. Should the legislature now so provide, it would not deprive the husband of any vested right to property, or give the wife an interest in his estate during his life. If the property did not belong to the husband, there would be no occasion for a law limiting his testamentary power with reference thereto. The original statute, which practically adopted the Mexican system as to *gananciales,* was held to constitute such a limitation. (*Beard* v. *Knox,* 5 Cal. 256; 63 Am. Dec. 125.) That gave the wife a nominal estate during the marriage which became an actual estate upon its termination.

If the husband cannot make a valid transfer of the property for the purpose of depriving the wife of it, that does not show a vested right in her. This is explained in the very case quoted as authority, in *Godey* v. *Godey,*

*supra.* In *Smith* v. *Smith*, 12 Cal. 217, 73 Am. Dec. 533, Justice Field said: "Voluntary conveyances, given on the eve of marriage for the purpose of depriving the intended wife of her right of dower, where that common-law right exists, are fraudulent as against her claim. This was so adjudged in *Swaine* v. *Perine*, 5 Johns. Ch. 482, 9 Am. Dec. 318; and upon the same principle, a voluntary disposition by the husband of the common property, or a portion thereof, for the like purpose of depriving the wife of her interest in the same, must be held ineffectual against the assertion of her claim." Nor can he put his separate property out of his hands for the purpose of defeating his wife in an anticipated application for alimony. (*Murray* v. *Murray*, 115 Cal. 266.) So we see a mere expectancy, without any vested property right at the time the fraud was committed, is sufficient to enable the person who has the expectancy to maintain the action after his right has become vested.

The husband's ownership of one-half of the community estate is in a sense conditional. It may terminate upon the happening of a possible event. Until then he is, however, absolute owner as defined in the code. (Civ. Code, secs. 678–80.)

The marital community was not organized for the purpose of accumulating property, and the husband owes no duty to the community, or to the wife either, to labor or accumulate money, or to save or practice economy to that end. He owes his wife and children suitable maintenance, and if he has sufficient income from his separate estate for that purpose he need not engage in business, or so live that there can be community property. If he earns more than is sufficient for such maintenance he violates no legal obligation if he spends the surplus in extravagance or gives it away. The community property may be lost in visionary schemes or in mere whims. Within the law he may live his life, although the community estate is dissipated. Of course I am not now speaking of his moral obligations.

We derived the system of community estate from the Mexican law which prevailed here before the acquisition of the territory.   The system was unknown to the common law, and it has no better name for the interest of the wife during the marriage than "a mere expectancy." The Mexican jurists spoke of it as a feigned and fictitious ownership or as merely nominal, and it is contrasted with the ownership of the husband.   That is called the actual or true ownership.   In *Panaud* v. *Jones*, 1 Cal. 488, it is said: "The wife, says Febrero (Febrero Mejicano, sec. 19, p. 225), is clothed with the revocable and *feigned* dominion and possession of one-half of the property acquired by her and her husband during the marriage; but, after his death, it is transferred to her effectively and irrevocably. . . . . The husband needs not the dissolution of the marriage to constitute him the real and veritable owner of all the *gananciales,* since even during the marriage he has in effect the irrevocable dominion," etc.

In *Van Maren* v. *Johnson*, 15 Cal. 308, it is said that the estate of the common property is in the husband, and he may dispose of it as he can of his separate estate— the interest of the wife being a mere expectancy.   *Guice* v. *Lawrence*, 2 La. Ann. 226, is cited as authority.   In *Packard* v. *Arellanes*, 17 Cal. 525, that case is again cited as authority, in which it is said that during the life of the husband the wife cannot say she has *gananciales*— that is, community property—but the husband during marriage is *"real y verdadero dueno de todos, y tiene en el effecto su dominio irrevocable."*   Where, too, the interest of the wife was said to be revocable and fictitious.

In Escriche, under *Bienes Gananciales*, it is said that the husband owns the community property, both nominally and in fact—*en habito y en acto*, while the wife's ownership is only nominal—*en habito*—becoming an actual estate upon the dissolution of the marriage.

In Ballinger on Community Property, section 35, the Mexican law is stated as above, the wife had only a feigned or fictitious estate which ripened into a legal

estate upon the termination of the marriage, and he
adds—referring to the state of things under the former
statute of this state which provided that upon the death
of the wife prior to the death of the husband one-half
of the community property should go to her heirs—that
since the statute failed to provide that upon the death
of the wife one-half should go to her estate, her intan-
gible interest did not ripen into a legal estate.  Accord-
ingly, it was held in *Packard* v. *Arellanes, supra,* that
under such circumstances the interest of the wife could
not be administered upon, and that her heirs did not
acquire the estate by inheritance from her upon her
death before her husband, but took as persons desig-
nated by the statute.  Speaking of the wife's interest, it
is there said: "Such interest constitutes neither a legal
nor an equitable estate, and there is, therefore, nothing
in it for a court of probate to act upon.  If, under the
statute, the title of the husband, upon the death of the
wife, is divested as to any portion of the property, such
title passes directly to the descendants of the wife, and
they take it subject to the liability of the property to be
absorbed in the payment of debts."

As the law stood prior to the amendment of 1891, I
doubt if a happier phrase could have been devised to
express the interest of the wife in the community than
that used by Judge Field in *Van Maren* v. *Johnson, su-
pra,* "a mere expectancy."  It may be said to be a right
—not to property, but, as against the community—to
take one-half of the residue after payment of debts
in case the marriage be dissolved during her life.
A somewhat similar state of things exists in France
under the code, and it has been there said that the wife
is not *"proprie socia, sed speratur fore.*  She has *une sim-
ple esperance* to share in such property as may be found
at the dissolution of the community undisposed of by
the husband."  (1 Burges' Colonial Law, 368.)

The system of the community in California, Louisiana,
and Texas was inherited from Spain or Mexico, and
simply continued with such changes as were deemed

desirable.    It was adopted in Washington, Nevada, Idaho, and Arizona.    The systems are not exactly alike. In some states—Texas, Louisiana, and Idaho—profits, increase, and income of separate property also become community property.    It is not so here.    If the wife has separate property, the increase derived from it is also separate property; only the earnings and the profits gained in business and the increase of property so acquired is community property; and, as we have seen, the wife *may* so manage as to convert all gains derived from business transacted by her into her separate property.

In Washington the husband cannot convey real estate belonging to the community without joining the wife; there the husband and wife may at any time agree as to the *status* of the community property, such agreement to take effect at the death of either, and either may give, grant, or sell to the other his or her interest in community property.    Naturally, in that state it has been held that the wife has a vested interest in the community property.    (Ballinger on Community Property, sec. 78.)    In no other state, so far as I am aware, has there been any such holding, although in Texas it has been said that she has an equitable interest.

It is suggested that the sole ownership of the community property—if it be conceded to the husband—is vested in him by statute, and may be taken from him by statute.    All ownership has been said to be the offspring of law, but it does not therefore follow that all property rights can be divested by law.    In fact, I see no connection between the premise and the conclusion. Whether the law of the marriage relation can be changed so as to affect the *status* of property acquired thereafter is another question.

The community property, as a rule, constitutes the earnings, gains, and savings of a man during his whole lifetime.    If he can make presents to his friends, provide for indigent relatives, or make advancements to his children, it must be from this property.    To deprive

him of this power is certainly to divest him of a property right.

This argument need not, however, be pursued further, because counsel admit that if the husband is the owner of the property, then a statute which makes the exercise of the right to dispose of it subject to the will of another is unconstitutional.

Entertaining these views, it is unnecessary to consider the other contention under this head, that the amendment violates the obligations of a contract. It is clear, I think, that the operation of the amendment must be confined, *at least*, to community property acquired after its passage.

I think the ruling sustaining the demurrer to the complaint, on the ground that there is a misjoinder, in that the wife cannot be joined as plaintiff in an action to recover community property, must also be sustained—and that without reference to the question as to the nature of the wife's interest in the community property. If the gift was void, the property still remained community property, and was as much under the management and control of the husband as any other portion of the community property. To hold that the wife is a necessary or proper party in this case would be to hold that she is such in every case brought to recover community property. The statute, as amended, does not give her a right of action in this case, but leaves it to the general rule. It has been held for near half a century that she is not a proper party to such actions.

The judgment and order are affirmed.

HENSHAW, J., HARRISON, J., and McFARLAND, J., concurred.

BEATTY, C. J., concurring.—I concur in the judgment, but upon a ground somewhat narrower than that taken in the opinion of Justice Temple. It does not seem to me necessary, in order to sustain the ruling of the superior court upon this demurrer, to go to the extent of

holding the proviso added to section 172 of the Civil Code by the act of 1891 an unconstitutional attempt to take away from the husband his vested rights in community property acquired prior to that date. I am not at all clear that it does impair any vested right. But, allowing the law to be constitutional as to all community property, irrespective of the date of its acquisition, or of the marriage by which the community was formed, it still does not go far enough to sustain this action.

If the husband makes a gift or voluntary transfer of community property, the transfer is good against him. He has no right of action to recover it back. The only person who in any case has a right to complain is the wife, and she cannot maintain an action to revoke the gift until she has been injured by it. Upon the dissolution of the community by the death of the husband, or by divorce, I think that in estimating her share of the community property she would be entitled to have any property given away by the husband subsequent to the act of 1891 reckoned as a part of the community assets, and that she would be entitled to reclaim from the donee enough to make up her half of the whole, if less than one-half remained undisposed of. In all ordinary cases this would be the proper and sufficient remedy for any infringement of her rights. It is possible that a case might arise in which the circumstances would warrant the institution of an action by her before the dissolution of the community, but no such circumstances are shown to exist in this case. It does not appear that the amount of the gift was so disproportionate to the amount of the community property as to endanger the right of the wife to her full share on the dissolution of the community, or to deprive the husband of the means of supporting the wife and others dependent upon him. In short, it does not show any present or prospective injury to her, and he, of course, has no ground of complaint. If the wife survives her husband, she will get her full share of the community

property out of that which remains. If the husband survives the wife, he will get everything that he has not voluntarily parted with.

On this ground I place my concurrence in the judgment.

Rehearing denied.