## FRANCISCA ARAN Y ARAN
### *v.*
## FRITZE, LUNDT, & COMPANY ET AL.

San Juan, Equity, No. 482.

---

## FRANCISCA ARAN Y ARAN
### *v.*
## ALFREDO CHRISTY Y VANELL.

Equity, No. 483.

---

## FRANCISCA ARAN Y ARAN
### *v.*
## CARMEN SURIÑACH Y RIVERA ET AL.

Equity, No. 486.

---

1. The district court of the United States for Porto Rico has no juris-
diction of probate matters.
2. An administratrix of an estate, unclosed in the insular court, cannot
come into the Federal court to settle matters collateral to the ad-
ministration in the insular court.

Opinion filed April 18, 1908.

---

*Mr. Francis H. Dexter* and *Mr. Willis Sweet,* solicitors for
complainant in all three cases.

*Mr. C. Coll y Cuchi* and *Mr. Herminio Diaz Navarro,* solici-
tors for defendants Fritze, Lundt, & Company, in Liquidation,
et al., and Carmen Suriñach y Rivera et al.

RODEY, Judge, delivered the following opinion:

(There is another suit, No. 481, of the same character as the
three above mentioned, pending between this same complainant

and the Banco de Soller, in which the facts and pleadings are practically the same. This latter suit has not been argued or submitted to us, but it will.necessarily be affected by the decision on the issue now before us.)

These are suits in equity, and the issue before us is raised by the general demurrers of the several respondents to the bills. The complainant is the widow of Luis Aran y Lanci. She seeks to have the sales and mortgages mentioned in the several bills set aside and canceled on the ground that the same were executed without her knowledge or consent by her said late husband in his lifetime, contrary to the provisions of the Civil Code of Porto Rico. She also prayed for an injunction against certain foreclosures of the mortgages and for a decree canceling the same of record, and for other relief that it is not necessary here to mention.

The bills were filed in the latter part of June and during the first days of July, 1907. After service of process, some of the respondents came in and demurred; but the same not having been set down for hearing, answers were filed at a later date in all except No. 483, where a decree *pro confesso* had been taken. These answers were filed without waiving the demurrers. The bills being in each case practically the same as to substance, and the demurrers in each case being general, they can all be easily considered together.

About the time the bills were filed, the court was on the eve of taking its summer vacation; and so, by agreement of counsel, an order was made granting temporary injunctions to prevent foreclosures in the insular courts in the meantime.

On the 11th of November, 1907, the bills were all amended so as to show certain details of payment on the Tornabells purchase that will be hereinafter referred to, but the demurrers still stood as to the bills as amended. Thereafter, in the latter part of

December, 1907, a short hearing was had before the court, at. which a small amount of oral testimony was taken, being the evidence of complainant herself and that of a relative. Several exhibits were also introduced at this time, so that the court might be apprised of the provisions of the mortgages and deeds complained of. The original bills are sworn to, but the amendments showing these specific payments are put in by counsel without oath, and remain unverified, unless the evidence of complainant. herself, as given on the stand, can be said to have that effect.

On the 22d day of June, 1907, we rendered a somewhat extensive opinion in the case of Will v. Tornabells, ante, 127, in the Mayaguez district of this court, wherein we gave the entire history of the acquisition of a large amount of property by complainant's husband before his marriage to her, portions of which property are now here involved. We now notice that complainant alleges in the several bills we are here considering, that she had no knowledge of the execution of the mortgages or deeds here complained of, and that she did not consent to the same, either verbally or in writing. However this may be, it is certain that after the death of her husband she filed an answer in the Will v. Tornabells suit, aforesaid, where all of the persons she is now suing here were codefendants with her.

On the 2d day of May, A. D. 1900, Luis Aran y Lanci, as stated, bought 197,700 pesos worth of property, consisting mostly of real estate, on ten years' time without interest, from the firm of J. Tornabells & Company, which purchase included all of the real estate mentioned in the several mortgages and deeds here now complained of in the above-entitled suits. He paid 30,000 pesos in cash at the time of the purchase, but it transpired that within sixteen months thereafter, or, to be exact, on. the 13th day of September, 1901, by the swapping of accounts and the payment of considerable amounts in cash, and by get-

Aran y Aran v. Fritze, Lundt, & Co.

ting a discount of nearly $40,000 for the advanced payment, he had completely paid off and canceled the whole of the debt.

Thirteen days after the purchase of this property, and on the 15th day of May, A. D. 1900, the said Luis Aran y Lanci married complainant. The deed to the property purchased from Tornabells & Company was, of course, made to himself under its proper date, although, as a matter of fact, it was not recorded until several months after the marriage, several other transfers of portions of the property having taken place in the meantime.

Complainant and her said husband were citizens of France, but had lived for many years at Mayaguez in Porto Rico. She testified in these causes that she and her late husband were cousins, that she had been married previously, but her first husband died a good many years ago, and that he left her some means. That some time previous to her marriage to the said Luis Aran y Lanci, she had given him eight or ten thousand dollars to use in his business, and that there was an understanding between them that he was to "acknowledge" to her $15,000, but that they "had no papers about it at all." With a view, we presume, of showing that her said late husband made all these payments, amounting to nearly $100,000, to clear off the Tornabells purchase, after the marriage, out of the community or "ganancial" property, counsel for complainant brought out from this other witness the fact that he, the witness, was well acquainted with the affairs of the deceased, and that the latter made vast profits after the date of the marriage, and before the date of the final payment on the Tornabells purchase, out of the finca Dolores which he (deceased) owned and was conducting, and out of the Central Altagracia, or sugar factory, which deceased was at the time conducting under a lease.

It might be well to keep in mind certain dates, as they will be

important in the discussion of this issue. The purchase from Tornabells & Company was made, as stated, May 2, 1900. The marriage of complainant to Luis Aran y Lanci took place thirteen days later, on May 15, 1900. The final receipt was given by J. Tornabells & Company to Luis Aran y Lanci, September 13, 1901. The date of the mortgage to the Banco de Soller (suit No. 481) is June 18, 1902; that to Fritze, Lundt, & Company, et al. (suit No. 482) is January 7, 1903; that to Alfredo Christy y Vanell (suit No. 483) is June 4, 1904; and the mortgage and deed to Carmen Suriñach et al. (suit No. 486) is September 16, 1905. The date of the death of the said Luis Aran y Lanci is October 28, 1905.

One of the important questions to be decided is whether, at the date of the making of the several mortgages or deeds referred to in the bills, a husband in Porto Rico could sell or encumber such real estate without the consent of his wife, even if it shall be held to be his separate property by reason of the actual purchase having been made and the deed dated thirteen days before the marriage. It probably cannot be questioned that, at least previous to American occupation of Porto Rico, the untrammeled civil-law rule regarding community partnerships, and the unlimited, and, at least, in the absence of any contrary prenuptial contract, the absolute power of the husband as administrator thereof to encumber or dispose of the same by his sole deed, prevailed. That this is the rule in countries where the purely civil-law rule in that regard obtains is made manifest by the excellent exposition of the subject given in the opinion of Mr. Justice White in Garrozi v. Dastas, 204 U. S. pp. 78 et seq., 51 L. ed. 378, 27 Sup. Ct. Rep. 224. The case then being considered in fact went up from this court, and that rule was, by that opinion, held to be the law in Porto Rico. It appears,

III. PORTO RICO—33.

Aran y Aran v. Fritze, Lundt, & Co.

though, that the occurrences out of which the cause of action in that case arose, all took place previous to the adoption of the Civil Code of Porto Rico of 1902, which displaced the Spanish Civil Code of 1889; yet that court, considering the Code of 1902 as to the power of the husband, held it to be absolute as far as was necessary for the decision of that case, which referred principally to the disposition of personal property by the husband. The real estate transfers referred to in that case, although adjudicated in the court below, were not attacked as such on the record that went to the Supreme Court.

In that case, §§ 1412 of the old Code and 1327 of the new Civil Code of Porto Rico are construed, and comparison is made between them and article 1421 of the Code Napoleon and article 2404 of the Louisiana Code, and the court states, p. 78: "The question, therefore, is this: Is the power of the husband, as the head and master and administrator of the community, in its nature so restricted that, in the absence of express limitation, he can, after the dissolution of the community, be called to account and compelled to return to the community money which he has actually expended during the existence of the community, because, in the judgment of a court, such expenses may be deemed to have been not suitable to his situation in life, extravagant, or even reckless? To answer this question in the affirmative would be to destroy the whole fabric of the community system as prevailing not only under the Spanish and Porto Rican Codes, but as obtaining in those countries of the continent of Europe and here where that system prevails."

In fact, that whole opinion, in its following pages, is a review of the highest authorities in all jurisdictions where this rule prevails, and holds it to be as herein first above stated.

It does not appear from this opinion in Garrozi v. Dastas

Aran y Aran v. Fritze, Lundt, & Co.

that § 159 of the Civil Code of Porto Rico of 1902, which is largely a copy of § 59 of the old Code of 1889, was called to the attention of the Supreme Court of the United States at the time that decision was rendered. This section of the new Code, after stating, as in the old Code, that "the husband shall be the administrator of the conjugal property except when stipulated otherwise," goes on and provides, among other things, that "nevertheless, the real property belonging to the conjugal community may not be alienated or burdened, such a transaction being null, except when effected with the mutual consent of both parties to the marriage." This section is followed by an additional section (160). It provides: "Each one of the parties to a marriage is the owner and administrator of his own property." It is manifest that this word "his" is to be understood in a proper case as "her."

Subhead 3 of § 1316 of this same new Code of 1902 of Porto Rico, after defining what property shall belong to the conjugal partnership, gives the following as an item thereof: "The fruits, income, or interest collected or accruing during the marriage, coming from the partnership property, or from that which belongs to either one of the spouses."

Section 1314, when defining what property shall be considered as the separate estate of each of the spouses, enumerates as items of the same:

"1. That brought to the marriage as his or her own.

"2. That acquired for a good consideration by either of them during the marriage.

"3. That acquired by right of redemption or by exchange for other property belonging to one of the spouses only.

"4. That bought with money belonging exclusively to the wife or husband."

Aran y Aran v. Fritze, Lundt, & Co.

Item 2 in the above enumeration having evidently been an error, and it certainly is a departure from the codes of all the civil-law countries and states, was shortly thereafter amended by an act of the local assembly of March 12, 1903, p. 43, Sess. Laws, so as to read: "That acquired by either of them during marriage by 'titulo lucrativo,' that is to say, by gift, devise, or descent."

Section 1311 provides that "the conjugal partnership shall always begin on the same day that the marriage is celebrated; any stipulation to the contrary shall be void."

Section 1322 provides: "All the property of the marriage shall be considered as partnership property until it is proven that it belongs exclusively to the husband or the wife."

Section 1327, as stated by Mr. Justice White in Garrozi v. Dastas, supra, is a copy of § 1412 of the old Code, and it provides that "the husband is the administrator of the conjugal partnership," etc.

Section 1328 of the new Code provides that, "notwithstanding the power which the husband has as administrator, he shall not have power to give, to sell, and to bind for a consideration, the real estate of the conjugal partnership without the express consent of the wife. Every sale or agreement which the husband may make in respect to the said property in violation of this section and the other provisions of this Code, or in fraud of the wife, shall be null, and shall not prejudice her or her heirs."

Section 1331 of the new Code and the succeeding sections contain elaborate provisions for the liquidation of the conjugal partnership.

It is probable that the questions now raised here by the demurrers to these bills had been mooted soon after the adoption of the Civil Code of 1902, because, on March 10, 1904, the local

assembly (Sess. Laws, p. 183), amended § 160, above referred to, of that Code, so that it should read as follows: "The husband and wife shall have the right to manage and freely dispose of their respective separate estates."

Now it is certain that, as to all of the mortgages or deeds in question in these present suits, dated after March 10, 1904, that is, those mentioned in suits 483 and 486, the first being dated June 4, 1904, and the second September 16, 1905, complainant can have no cause of action here if the property trans-ferred belonged to the separate estate of the deceased husband, Luis Aran y Lanci. But, when arguing against complainant's right to maintain the suits at all, counsel for respondents contended that § 159 of the Code of 1902, supra, preventing the husband from alienating or burdening real property, specifically refers to, "real property belonging to the conjugal community," and that, because the next section provides that "each one of the parties to a marriage is the owner and administrator of his own property," hence, the property in question, having all been bought before the date of the marriage, the deceased had, under that language of that section, a perfect right to mortgage or deed it away as he did in these cases, without the signature or consent of his wife. The further contention was made that the repetition, in § 1328, that the husband, as administrator, shall not have such power without the wife's consent, also refers specifically, as will be seen, to "real estate of the conjugal partnership" only, and that the other section, 160, next following, gave him an absolute right to transfer his own separate property by his sole deed, which, it is contended, the bills themselves show the property in question was.

Counsel for respondents further contend that, even though it should be held that the income from this large amount of prop-

erty which the deceased bought so short a time before his marriage was ganancial or community property, still the law, as set out in the local statutes aforesaid, contains no inhibition, as was decided in Spreckels v. Spreckels, 116 Cal. 339, 36 L.R.A. 497, 58 Am. St. Rep. 170, 48 Pac. 228, as well as probably also in Garrozi v. Dastas, supra, against the husband's complete dominion over, and power of disposition of, all ganancial personal property without the signature or consent of the wife, and that, if the wife has any right in such property, it arises only after the dissolution of the conjugal partnership, and on an inventory taken and liquidation of the community estate, and after the payment of the community debts; that this is especially so as to any money she may have given him before the marriage, for which she is a mere general creditor, but that, as to mortgage creditors or innocent purchasers for value without notice, she can have no cause of action here until after liquidation of the conjugal partnership in the proper local court.

The supreme court of Porto Rico, on the 21st day of October, 1902, which was some six months after the passage of the re-referred-to Civil Code of that year, held, in the case of Parra v. El Registrador de la Propiedad de Ponce, 1 Castro, P. R. 343, that it is necessary to have a liquidation of the conjugal estate after the dissolution of the community before it can be known to a certainty that there is any community property; and that, until that is done, the surviving husband is a mere co-owner of the estate, and that thereafter the interests should be properly annotated to the proper parties under art. 20 of the mortgage law and its regulations. This same court, under date of April 16, 1906, in the case of Vivaldi v. Mariani, 3 Castro, P. R. 215, held that "§ 1323 of the Code of 1902 is not in conflict with § 1328 thereof, because they both can easily be harmonized."

Aran y Aran v. Fritze. Lundt, & Co.

. The burden of the entire brief here of one of the counsel for complainant is that, because the legislative assembly of Porto Rico, in 1902, adopted several codes, such as a political code, a penal code, a civil code, etc., we should therefore hold that the intention was to depart from the previous Spanish civil-law rule, that the husband was presumably the absolute owner and administrator of everything during the existence of the marriage, and adopt the modified civil-law rule which prevails in several countries and also in several of the states of the Union, that the wife has a present subsisting interest in all the estate standing. in the husband's name, whether the same was purchased before the marriage or not.

Now, as this local statute at most requires him to procure her consent or signature when he sells or mortgages real property only, belonging to the conjugal partnership, and it immediately thereafter, as stated, provides in § 160 that "each one of the parties to a marriage is the owner and administrator of his own property," we think the words "owner and administrator" were meant to continue the old rule as to power of sale or mortgage of at least the separate estate of each. The local legislature, as we think, to prevent that section being held to mean that each could do as he or she pleased with his or her own separate estate, passed the new act of March 10, 1904, aforesaid. But we do not see that the enactment of this amendment necessarily implied or admitted that the language we have quoted from the law as it previously stood did not have the same effect previous to the passage of the amendment. We are all the more inclined to this belief because of the language of the court in Garrozi v. Dastas, 204 U. S. pp. 78 et seq., 51 L. ed. 378, 27 Sup. Ct. Rep. 224, and in the light of all the other sections of law above

quoted and many other sections of the Code which we have examined, but have not set out above.

We are therefore unhesitatingly of the opinion that, as to separate real estate of each of the spouses in Porto Rico, their right to dispose of the same by their sole deeds cannot now, nor could it even before the passage of that amendment, be questioned. We hold that property that appears by the date of the deed to have been bought previous to the marriage, in the name of the husband, and recorded in his name, is prima facie such husband's separate estate, and that the contrary can only be shown in an affirmative proceeding during the liquidation of the community estate in the proper court.

But whether we are right or wrong as to this, there is another question in these cases of controlling importance. The bill in each of the cases sets out that the complainant is administratrix, under authority of the proper local court, of the estate of her said late husband, and that the respondents herein are severally endeavoring to foreclose their mortgages against the estate in said same court. She does not allege that the administration or liquidation of her said husband's estate has been closed, and the brief of opposing counsel claims that it has not. It seems to us that complainant is already in the proper tribunal to settle this whole matter, as, in the last analysis, it is a mere incident to the liquidation of the conjugal estate, and is necessarily a probate matter, to ascertain what property belongs to, and remains in, the partnership. The heirs of the deceased and others may have rights as well as complainant, and they are not here, but presumably are before the other court.

In a short opinion recently filed in this court in the case of Amsterdam v. Puente, ante, 447, we held, citing Byers v. McAuley, 149 U. S. 608, 37 L. ed. 867, 13 Sup. Ct.

Rep. 906, and Farrell v. O'Brien (O'Callaghan v. O'Brien) 199 U. S. 89, 50 L. ed. 101, 25 Sup. Ct. Rep. 727, that this court has no probate jurisdiction. The thought has appealed to us during our entire consideration of these bills, that this complainant is not in a position to appeal to this court until there has been a liquidation of the community estate in the proper local court. It will, of course, be contended, that this court, under the organic act, should be held to have concurrent jurisdiction with the local courts in such matters, and that there is no distinctively and exclusively probate court in this island. Even though it be claimed that there was no such court previous to March 9, 1905, which we deny, it seems to us that the elaborate act relating to the estates of deceased persons passed on that date (Sess. Laws P. R. 1905, pp. 137 et seq.), as well as the provisions of the Code of 1902 with reference to the liquidation of the property of the conjugal partnership, §§ 1331-41, confers exclusive jurisdiction on the district court of the proper district of the last residence of the deceased in that regard, and such proceedings, as we stated in the Amsterdam v. Puente matter, supra, not being a suit between parties in the technical sense, cannot be brought in the United States court even though diverse citizenship exists. Nor do we think that collateral questions arising out of mere probate or administrative proceedings, or out of the liquidation of decedents' estates or conjugal partnerships that strictly belong to the probate proceedings, can be brought in this court.

As we write this opinion, the decision of the Supreme Court of the United States in Garzot v. Rios de Rubio, and Burset v. the same respondent (two cases that were tried together), dated April 6, 1908, comes to hand. [209 U. S. 283, 52 L. ed. —, 28 Sup. Ct. Rep. 548.] While that decision passes upon

several other points not necessary to quote here, it does, we think, settle this question we are now considering in accordance with the view we took of it in the Amsterdam v. Puente Case, *supra*, and that we are now here expressing.

Referring to the cases then being considered, the Supreme Court of the United States said: "As by the bill it is alleged that, on the death of the father and brother, probate proceedings concerning both estates had been commenced in the proper Porto Rican court, it results that not only did the bill seek to administer the estates through the court below, but it sought also to do so, although the estates were open in the local court and subject to the power and authority of such court. In establishing a civil government for Porto Rico, Congress, scrupulously regarding the local institutions and laws, by § 33 of the act of April 12, 1900 [31 Stat. at L. 84, chap. 191], preserved the local courts, both original and appellate, and recognized their power and authority to deal generally with all matters of local concern. In creating, by the 34th section of the same act, the district court of the United States for Porto Rico, the jurisdiction and power of that court, we think, by the very terms of the act, were clearly fashioned upon and intended to be made, as far as applicable, like unto the jurisdiction exercised by the circuit and district courts of the United States within the several states of the Union. It is true that the jurisdiction of the district court, resulting from citizenship, has been made broader than that conferred upon the circuit and district courts of the United States within the states. But this does not tend in any way to establish that it was the purpose of Congress, in creating the district court of the United States for Porto Rico, to endow that court with an authority not possessed by the courts of the United States (Farrell v. O'Brien, **supra**),

Aran y Aran v. Fritze, Lundt, & Co.

to exercise purely probate jurisdiction to administer and settle estates in disregard of the authority of the local court as created and defined by law."

That case goes on further at considerable length, and, as we think, with reason, to show that in Porto Rico the local courts have exclusive jurisdiction in probate matters, and also that the same rule prevails in Louisiana, and cites several cases from that state in support of that view. Later still the opinion argues at length on the right of the local courts having this jurisdiction, even though the distinctions between law and equity in the full and technical sense do not obtain in such tribunals, to settle other collateral and incidental issues because they are charged with the administration of estates, and such administration is necessarily one of general as well as probate jurisdiction, and so the power must be held to be ample. In this regard the Supreme Court cites Lawson v. Ripley, 17 La. 238, which decision cited many cases of that state holding that those courts (the local courts of Louisiana) "possess all powers necessary to carry their jurisdiction into effect; and when, in the exercise of that jurisdiction, questions arise collaterally, they must, of necessity, decide them, for if they could not no other court could," etc.

In Porto Rico the local district courts are nisi prius courts of reasonably broad general jurisdiction, and possess, we think, even under the Code, considerable though limited equity, coupled with complete probate jurisdiction.

Section 7 of the Civil Code of Porto Rico of 1902 provides: "* * * When there is no statute applicable to the case at issue, the court shall decide in accordance with equity; which means that natural justice, as embodied in the general principles of jurisprudence and in accepted and established usages

Aran y Aran v. Fritze, Lundt, & Co.

and customs, shall be taken into consideration." But whether the jurisdiction of the local district courts can be said to be in any sense equitable, we are of opinion that, under the decision last above quoted from the Supreme Court of the United States, it must be held to be broad enough to include all matters necessary to a proper settlement of the estates of deceased persons.

We fully appreciate the importance of the ruling we are here making by this supposed restriction upon the jurisdiction of this court, but we are nevertheless satisfied that such is the law, and that such is the opinion of the Supreme Court of the United States.

Therefore the demurrers as to suits No. 482 and No. 486 will be sustained and the bills dismissed with costs; and as to suit No. 483, the court *sua sponte* sets aside the decree *pro confesso* taken therein, and dismisses that suit and also suit No. 481, with costs. The injunctions as to all of said cases in which any may have been issued will be dissolved, and it is so ordered. Proper short decrees will be prepared and entered accordingly, as may be proper in each case.