## RAFAEL MARTINEZ Y NADAL

*v.*

## DAVID W. MAY.

Mayaguez, Law, No. 218.

1. Under §§ 159 and 1328 of the Civil Code of March 1st, 1902, of Porto Rico, a wife must join her husband in a deed of community realty, or the instrument will be ineffectual to transfer her interest or that of her heirs in the property.

2. Her failure to so sign is not cured by the local act of February 24, 1903 (Session Laws, p. 57), as its terms are not broad enough to include such an omission. The wife's failure to sign such a deed is not a mere defect; it is a failure of parties.

3. Even previous to the adoption of the Porto Rican Civil Code of March 1st, 1902, the wife had such an interest in the ganacial or community realty as that it was within the power of the local assembly to change the agency by which the same could be alienated, and to require that the wife must join in the deed.

Opinion filed October 9, 1909.

Martinez y Nadal v. May.

*Messrs. Pettingill & Cornwell,* attorneys for the plaintiff.

*The Attorney General of the island,* for the defendant.

RODEY, Judge, delivered the following opinion:

This is an action in ejectment by which plaintiff asks to be declared the owner of, entitled to, and let into the possession of, an undivided one-half interest in a plantation called "Carmen," containing about 225 cuerdas of land situated near Mayaguez, on this island. He alleges himself to be a citizen and resident of Porto Rico, and that the defendant is a citizen of the United States. Defendant is the superintendent of the Agricultural College and Experiment Station of the island,—the land sued for being the tract upon which that institution is situated. The issue is raised by a general demurrer to the complaint. Counsel for the parties were fully heard orally, and each thereafter filed elaborate written briefs and arguments. We have heretofore held that a suit of this kind, where the local or national government is the real defendant, can be maintained against the officer in possession. Compañia de los Ferrocarriles v. Rohrer, 3 Porto Rico Fed. Rep. 123; United States v. Lee, 106 U. S. 196, 27 L. ed. 171, 1 Sup. Ct. Rep. 240.

The facts, as we gather them from the complaint, are as follows:

An individual named Isidoro Fernandez Sanjuro and his wife, Altagracia Nadal y Freyre, were living near said Mayaguez, previous to March, 1902. That thereafter, on April 9th, of said same year (1902), the husband bought, with the wife's individual and separate money, the tract of land in question,

Martinez y Nadal v. May.

and took the title thereto in his own name. That later, on June 2d of said same year (1902), the husband without, as it is alleged, the wife joining therein or consenting thereto, and without her or her heirs having then or since received or derived any benefit from the proceeds thereof, conveyed said tract of land to one Elisa Garcia Sanjurjo, from whom presumably, although the same does not yet affirmatively appear, the insular government obtained its title. It appears from a statement in the will introduced on the issue, that this husband and wife separated, or that, as she alleges, he abandoned her just about the time of the purchase of the land, but whether before or after the actual purchase is not definitely stated.

On April 27th, 1906, the wife executed a closed will which, directly after her death, three months later, was, under date of July 28th, 1906, probated, or "established," by a decree of the insular district court for Mayaguez.

It is alleged that, by the third clause of this will, the testatrix deprived her husband of whatever usufructuary rights he might otherwise have in her estate, and that, by the terms of the seventh clause thereof, she devised to the plaintiff, her nephew, Rafael Martinez y Nadal, all the right, interest, and claim which might remain to her in the properties belonging to her, which should be in the name of her said husband, Isidoro Fernandez Sanjurjo.

It is further alleged that, at the time (July, 1906) of the dissolution of the conjugal partnership, by the death of the wife, the land in controversy was not subject to any debts, and that an undivided half interest in the same then passed to the estate of the deceased (and hence to plaintiff as devisee) free and clear of all obligations, liens, and burdens. This nephew is therefore suing for this interest in the land.

Martinez y Nadal v. May.

Many alleged reasons are set out in the demurrer to the amended complaint against plaintiff's right to recover, but we are constrained to disregard and overrule several of them as being without merit,—such as that the complainant is asking to enforce two causes of action; that the complaint is ambiguous, unintelligible, and uncertain; and that the action was prescribed under articles 462 and 1869 of the Civil Code, etc. There are several other matters set forth in the demurrer, such as that, because the wife has been dead for several years, her lack of consent to the making of the deed cannot now be proved by any witness, and that therefore the presumption arises that she did in fact consent to it, even though she did not sign the deed, under §§ 40 and 41 of the local act of March 9th, 1905 (Sess. Laws, pp. 77–8), and that the husband is presumed under § 102 of the local law of evidence (Id. p. 88), to have obtained her consent to the making of the deed in question. These matters we think, if available for any purpose, should come up in the nature of a request to instruct the jury on the trial.

A point made in the demurrer is that the local statute, § 1328 of the Civil Code of March 1, 1902, providing that "notwithstanding the power which the husband has as administrator, he shall not have the power to give, to sell, and to bind, for a consideration, the real estate of the conjugal partnership, without the express consent of the wife. Every sale or agreement which the husband may make in respect to the said property, in violation of this section and the other provisions of this act, or in fraud of the wife, shall be null, and shall not prejudice her or her heirs," is inapplicable, because it would impair the obligation of the contract of marriage subsisting between the parties prior to the passage of the act in question. It will be noticed,

Martinez y Nadal v. May.

though, that the complaint as amended alleges the property in question was bought by the husband in his own name with the separate money of the wife, on April 9th, 1902, that is, one month and nine days after the adoption of the Porto Rican Civil Code of March 1st of that year, of which Code the section being considered is a part.

It seems that, under the Civil Code of 1889, previously in force in Porto Rico, it was the law, as set forth in § 1413 and its references, that the husband, save in some few specified instances, could generally alienate and encumber, for a valuable consideration, the property of the conjugal partnership, without the consent of the wife.

We are of opinion that the local legislature had a right to adopt this section of the law changing the well-known rule of the civil law, which gave, during the existence of the conjugal partnership, to the husband alone administrative power over the entire estate, both real and personal, so that his sole deed could convey the same, and this would be especially true as to property purchased after the date of the change of the law. See our opinion in the Aran y Aran v. Fritze, L. & Co. 3 Porto Rico Fed. Rep. 509, and cases cited; see also Warburton v. White, 176 U. S. 496, 497, 44 L. ed. 559, 560, 20 Sup. Ct. Rep. 404. In this latter case, Mr. Justice White shows clearly, we think, that "the conferring on the husband the legal agency to administer and dispose of the property involved no negation of the community, since the common ownership would attach to the result of the sale of the property." Thus holding, as we think, that the wife always had a subsisting right in the community, and not a mere expectancy, and that therefore it was within the power of the legislature to change the mode of transfer.

Martinez y Nadal v. May.

We think, also, that, even under the Spanish community system, the wife had such an interest in the conjugal property as that it would be no violation of the obligation of a contract for the legislature to provide, certainly as to property acquired after the date of the act, that the husband cannot sell the community real estate without the wife's express consent.

It does not appear whether this couple were married previous to the treaty of Paris, or later, but, in any event, it is doubtful if the provision of the Constitution of the United States inhibiting laws that impair the obligations of a contract can be said to be applicable to the right of the legislative assembly of Porto Rico to change the Spanish system of the husband's absolute dominion over such property, theretofore existing. For this reason, while it is not necessary to decide the point, it may be that Spreckels v. Spreckels, 116 Cal. 339, 36 L.R.A. 497, 58 Am. St. Rep. 170, 48 Pac. 228, would have little force here.

Defendant also contends that, even if it should be held, under § 1328 and other sections of the local law, that the wife must actually join in the execution of a deed by signing the same, that still the infirmity in the conveyance in question, if any, was cured by an act of the local assembly of February 24, 1903, Session Laws, p. 57, which is as follows:

"That all deeds of mortgage, conveyances of real estate, wills, declarations of trust, marriages, recognitions of natural or illegitimate children, adoptions of minor children, and in general all acts and contracts which require for their validity the certification by a notary, or that may have required the intervention of the family council or a tutor or protutor, that may have been executed or drawn on and after the 1st day of March, 1902, or on or prior to the 1st day of January, 1903, and which,

according to the laws of Porto Rico in force on the 23th day of February, 1902, or in force on the 1st day of January, 1903, would be valid and sufficient, and entitled to be registered, copied, and filed in a registry of deeds, or in any office or archive in the island of Porto Rico, are hereby declared to be valid and sufficient for all lawful purposes thereby intended."

A careful examination of this curative act does not convince us that it was even intended to include and cure the defect in a deed such as is here in question. There is no defect in the deed itself here, such as failing to have it certified by a notary, or being made without the intervention of the family council or a tutor or protutor, but the allegation of the bill is that the deceased wife did not join in it or consent to it at all.

It was stated at the argument, by the attorney general of the island, that it is commonly reported that so many Codes were modified and adopted under date of March 1st, 1902, by the local assembly as that they did not get into print until late in the summer of that year, and hence many instruments executed during the intervening months failed to comply with unknown provisions of the amended or newly adopted Codes, and hence this curative act. However, we are of opinion that the language of the act is far from including the case of a wife failing to sign a deed at all, as is the case here. No authority need be cited for the statement that a statute must not be aided by intendments, if the result will be to deprive a defendant of a vested property right.

Another ground of demurrer is that the will under which plaintiff claims does not in fact, by its terms, devise the property in question to plaintiff. A duly certified copy of the will is before us, and section 7 thereof, under which it is claimed

Martinez y Nadal v. May.

the property comes to plaintiff, is certainly not very clear.    The material portion of it reads as follows:

".   .   .   Lego tambien á mi sobrino Rafael Martinez y Nadal, la hipoteca legal otorgada por mi esposo á mi favor sobre una finca de crianza sita en Guanajibo de Cabo-Rojo, caso de que no hubiera surtido efecto la cesión que ante notario hice de dicha hipoteca á favor de mi ameritado sobrino Rafael Martinez y Nadal, todos los derechos y acciones que puedan caberme en los bienes mios que estén á nombre de mi esposo, Isidoro Fernandez Sanjurjo, en virtud de la transacción celebrada con mi dicho esposo."

and a good translation of which is:

".   .   .   I bequeath, also, to my nephew Rafael Martinez y Nadal, the legal mortgage executed by my husband in my favor upon a breeding farm situated in Guanajibo de Cabo-Rojo, in case it, the assignment which I made before a notary, of said mortgage, in favor of my said nephew, Rafael Martinez y Nadal, would not have been effective, all the rights and action to which I may be entitled in my properties which might be in the name of my husband, Isidoro Fernandez Sanjurjo, by virtue of the transaction entered into with my said husband."

Now, it will be seen that the clause which it is claimed grants the property in question to the plaintiff comes in after his name is used the second time in the above paragraph, and with the use merely of a comma between his name and the clause in question, and further that the grant is made of such property only as is in the name of the husband by virtue of the "trans-

acción" (bargain, understanding, agreement, writing, or com-
promise) celebrated between the husband and the wife. What
that "transacción" was is not before us, and the property in
question may or may not be included in or affected by its terms.
We think, however, that this is an objection to be cured by plain-
tiff taking leave to amend his complaint in that regard if he
chooses, or by the defendant objecting to the will as insufficient
at the trial, unless supplemented by a copy of, or in some other
manner accounting for, this "transacción," for it is evidently
important.

In order to get as good an idea as can easily be obtained of the
rule of the civil law regarding the absolute administrative and
alienating power of the husband over the conjugal property
while the wife is living, a reading of the opinions of Mr. Justice
White of the Supreme Court of the United States, in War-
burton v. White, supra, and Garrozi v. Dastas, 204 U. S. 75,
51 L. ed. 377, 27 Sup. Ct. Rep. 224, et seq. will give anyone
the information required.

Counsel for defendant in this cause has gone to a great deal
of trouble to show us that the words "without the express con-
sent of the wife," as used in § 1328 of the local Civil Code, do
not necessarily mean that the wife must sign the deed, etc.   In
this regard counsel has analyzed several decisions of the su-
preme court of Porto Rico.   Perez v. Registrar, 1 Porto Rico,
373; Amadeo v. Same, 1 Porto Rico, 452; and Diaz v. Same,
1 Porto Rico, 547, with a view of showing that the court in
such cases did not so hold, and that, if it can be said that it did,
then the same was, under the facts of the case being considered,
mere *obiter dictum*.   We have fully examined and gone through
the cases cited. and are free to confess that we think the court

did hold that the wife must join in the deed, but independent of any of the citations given us, we would hold the language used in the act to mean that the wife must join in the actual deed by signing. With all due respect, we cannot see how that language can be construed to mean anything else. To our mind, to construe it in any other way would give rise to all sorts of fraud.

In our practice for many years, in New Mexico, where the community system prevails, and where the statutes with reference to that matter have been changed several times, it has always been held, perhaps out of an abundance of caution, that the express consent of the wife is best shown by her signature to the deed. Of course, we are not denying that if this was a suit against the wife or her heirs by the person who bought the property on the husband's sole deed, and the effort was to show that she did in fact consent, and the relief sought was to shut her or her heirs out from claiming any title to the property, then quite another question would be before us, but this is not that sort of a case. The issue here is raised by the demurrer to the complaint. If such a defense exists here, it cannot be raised by a speaking demurrer, but must, we think, be set up in an answer, or by a direct suit in equity for the purpose, but as to that we are not now deciding. It is the heir of the wife who is here alleging that the property descended to him under her will, because, as he alleges, she never disposed of it.

We must not omit pointing out here that there are other sections of the Civil Code of Porto Rico of 1902, referring to this matter. Section 159 is in substance the same as § 1328, supra, and provides that "the husband shall be the administrator of the conjugal property except when stipulated otherwise," and

Martinez y Nadal v. May.

continues "nevertheless the real property belonging to the conjugal community may not be alienated or burdened, such a transaction being null except when effected with the mutual consent of both parties to the marriage."

This, as was pointed out in our opinion in the Aran Cases, 3 Porto Rico Fed. Rep. 509, is followed by § 160, which provides that "each one of the parties to a marriage is the owner and administrator of his own property;" and, of course, as we said in the cases referred to, this pronoun "his," in a proper case, will be construed to mean "her."

Now, the bill alleges that this property was bought April 9th, 1902, after the enactment of the new Civil Code of that year, and the title taken in the husband's name. It will therefore be presumed to be community property until the contrary is shown. See § 1322, Civil Code. The point was not raised on the argument, and therefore we have not considered it, but we are not certain whether, under the peculiar situation of the law, this matter of the right to recover this interest in this property is not a probate matter, of which this court would not have jurisdiction. See the Garzot v. Rios de Rubio, 209 U. S. 283, 52 L. ed. 794, 28 Sup. Ct. Rep. 548. It is alleged that, at the date of the dissolution of the conjugal partnership, the property was not subject to any community debts, but it is not stated that any proper probate court ever so held. However, we are not passing upon that point.

Another point is that perhaps the cause ought to be tried in equity as the relief sought is to cancel a deed of record and inscribe another in its place. See our opinion in Hernandez v. J. Ochoa y Hermano, 4 Porto Rico Fed. Rep. 400, and Wehrman v. Conklin, 155 U. S. 314, 39 L. ed. 167, 15 Sup. Ct. Rep. 129, but we are not at this time passing upon that either.

Therefore we are of opinion that, is it is alleged that the wife in the case at bar did not join in, consent to, or derive any benefit from, the deed in question, and, because of the provisions of the Code then in force, it was necessary for her to have done so, the demurrer must be overruled, and an order to that effect will be entered. We express no opinion as to how the answer will be limited.