ESTATE OF J. HAROLD DOLLAR, DECEASED, ROBERT DOLLAR, II, AND KEITH R. FERGUSON, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

AGNES BARR DOLLAR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 97282, 98727, 97283, 98728. Promulgated April 17, 1940.

*E'. F. Treadwell, Esq.,* and *Keith R. Ferguson, Esq.,* for the petitioners.

*Arthur Murray, Esq.,* for the respondent.

## OPINION.

VAN FOSSAN: The only issue for our determination is whether or not certain stock was community property of Dollar and his wife during the years 1934 and 1935. Petitioners contend that decedent and his wife orally agreed, both before and after July 29, 1927, and before the taxable years, that all property owned by decedent was community property. Respondent argues that petitioners have not shown that deceased and Mrs. Dollar made an agreement converting all of decedent's property into community property.

Before the amendment of the Code of California, July 29, 1927, a wife's interest in property was no more than an expectancy, *Stewart* v. *Stewart*, 204 Cal. 546; 269 Pac. 439, and income derived from community property before that date was includible in the husband's income for Federal income tax purposes. *United States* v. *Robbins*, 269 U. S. 315. In 1927 the Legislature of California enacted a statute, effective July 29, 1927, giving each spouse a vested interest in the community but leaving the management in the hands of the husband. California Civil Code, sec. 172a. Income from community property acquired after that date belongs equally to husband and wife and should be reported separately by each in filing Federal income tax returns. *United States* v. *Malcolm*, 282 U. S. 792. Amendments which increase the community rights of the wife do not, however, give the wife a vested interest in property owned by the husband before their enactment. *Spreckels* v. *Spreckels*, 116 Cal. 339; 48 Pac. 228; *Levell* v. *Metropolitan Life Insurance Co.*, 118 Cal. App. 426; 5 Pac. (2d) 430. Nor is the income from such property divisible community income for purposes of the Federal income tax. *Hirsch* v. *United States*, 62 Fed. (2d) 128.

The passage of section 172a of the California Civil Code did not, of itself, affect Mrs. Dollar's interest in property acquired by Dollar prior to the effective date of that section. We must inquire, therefore, as to the existence of an agreement entered into after July 29, 1927, between decedent and Mrs. Dollar converting that property into community property in which she would have a one-half interest.

Under California law a husband and wife may make agreements concerning their interests in property. California Civil Code, sec. 158. They may, by agreement, convert separately owned property into community property. *Yoakam* v. *Kingery*, 126 Cal. 30; 58 Pac. 324. Such an agreement need not be in writing. In *Kenney* v. *Kenney*, 220 Cal. 134; 30 Pac. (2d) 398, the court said:

In the instant case the respondent testified that the parties had orally agreed both before and after marriage that all property then owned by them or subsequently acquired was to belong to them equally or as respondent put it, "fifty-fifty". That this agreement not only existed between the spouses but was in fact consummated by them during their marital life is established and confirmed by their acts * * *.

In the case of *In re Sill's Estate*, 121 Cal. App. 202; 9 Pac. (2d) 243, the court said:

* * * Without regard to the presumption found in section 164 of the Civil Code, it is well settled that the separate property of either or both spouses may be transmuted into community property and this may be done without the necessity of any written agreement providing the agreement or understanding to that effect is fully consummated. (*Estate of Kelpsch*, 203 Cal. 613 (265 Pac. 214); *Title Insurance & Trust Co.* v. *Ingersoll*, 153 Cal. 1

# 874

(94 Pac. 94) ; *Estate of Wahlefeld*, 105 Cal. App. 770 (288 Pac. 870) ; *Vieux* v. *Vieux*, 80 Cal. App. 222 (251 Pac. 640) ; *Martin* v. *Pritchard*, 52 Cal. App. 720 (199 Pac. 846).) It clearly appears from the foregoing authorities that "the agreement or understanding between the parties is not required to be in any particular words and need not be attended with any particular formality as long as it may be fairly inferred from all of the circumstances in evidence that a community interest was intended by the parties. * * *

In the present case respondent contributed her separate property along with the separate property of the deceased to acquire and improve a place to be used as their home. It does not appear that they had previously given any thought to whether the property should be conveyed to the deceased or to respondent or to both of them. When confronted with making this decision deceased said nothing and respondent said it made no difference. Immediately thereafter deceased assured respondent that "It is just as much yours as it is mine; this is our home." While the parties did not formally agree in precise words that the property should be community property, it is a fair inference from all the circumstances that such was their intention and understanding.

In *Helvering* v. *Hickman*, 70 Fed. (2d) 985, the Circuit Court of Appeals for the Ninth Circuit affirmed our decision that a husband and wife might orally agree that the earnings of each should be separate property so that the earnings of the wife were not taxable to the husband.

In the present cases, the income from the property in question is divisible between decedent and Mrs. Dollar only if they agreed after July 29, 1927, that the property was owned by the community. Mrs. Dollar testified that throughout the period of their marriage she and her husband had considered all marital property to be owned by each equally. The testimony of both witnesses of petitioners convincingly demonstrates that decedent and Mrs. Dollar agreed that all property was owned by the community.

Respondent contends that petitioners have not shown any definite date of agreement after July 29, 1927. The evidence does not definitely fix the date upon which the decedent and his wife agreed concerning their property interests. It is clear, however, that they first made such an agreement at the time of their marriage. The agreement was reaffirmed at various times throughout the period of the marriage. Before sailing for China in 1929, they again agreed that all property was community property. Finally, the wills of 1931 and 1934 are written evidence of the oral agreement between Dollar and his wife that they had an equal interest in the property. Respondent points out that the wills are of no value because wills speak only as of the date of death of the testator. Here, however, the wills were not in evidence as testimentary dispositions but were offered in support of the oral agreement of the spouses. The wills are strong corroboration of the testimony of the witnesses. Although purported oral agreements should be given close scrutiny, the present facts withstand the most minute inspection.

Respondent urges that the acceptance by decedent and Mrs. Dollar of the revenue agent's report on their 1930 returns indicates that they did not intend the property to be held by the community. This fact is not conclusive. Until the 1935 returns were filed no lawyer assisted in the preparation of the tax returns of decedent and his wife. The fact that Dollar included the entire income of certain stock in his income tax returns can not be taken as an admission that the property was not community property. At the most, it is merely an indication that deceased believed that the income was his income for Federal income tax purposes. Such action is consistent with the acceptance of the agent's report.

Decedent and Mrs. Dollar, after July 29, 1927, reaffirmed a valid agreement which converted the separate property of each into community property. We hold, therefore, that the income from the property in question was divisible community income and one-half was includible in the gross income of each spouse during the years 1934 and 1935.

*Decisions will be entered under Rule 50.*