PIETRO CRESPI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 103132. Promulgated June 6, 1941.

*Robert Ash*, *Esq.*, for the petitioner.
*D. D. Smith*, *Esq.*, for the respondent.

OPINION.

DISNEY: This proceeding involves a deficiency in income tax for the year 1938. The respondent determined a deficiency in the amount of $837.30, all of which is in issue. The only question for our determination is whether petitioner is domiciled in the State of Texas, and entitled to report his income on a community property basis. The Commissioner determined that he was not domiciled in Texas. The petitioner filed his return for the year 1938 with the collector of internal revenue for the second district of Texas.

The petitioner is the son of Pio Crespi, the president and principal stockholder of Crespi & Co. the predecessor of which was organized in 1908, and has since that time been engaged in the business of buying and selling cotton, with its principal office at Dallas, Texas. The head office has always been in Texas, which is the largest cotton-producing state. In 1938 the approximate gross volume of business done by Crespi & Co. was $15,000,000. It sells cotton for its own account, including sales to the textile mills in South Carolina, North Carolina, and Georgia, and to foreign countries, including England, France, Belgium, Holland, Germany, Norway, Sweden, Switzerland, and Japan. Charlotte, North Carolina, is the center of the domestic textile industry in the United States. The head office of the company and the financial end of the business originates in Dallas, Texas. It owns a warehouse in Galveston, Texas, which is the principal concentrating point for its cotton, and controls a warehouse in Greenville, South Carolina. Practically 75 percent of the textile business of the United States is conducted in the South at this time.

Petitioner was born in Waco, Texas, in 1909, and attended the public schools there. He started to work in Dallas in 1928 with Crespi & Co. Since that time he has worked for the company in Corpus Christi, Texas; Memphis, Tennessee; Atlanta, Georgia; Le Havre, France; and Bremen, Germany, and is now and was in 1938 in Charlotte, North Carolina. In all of these places, he has been buying and selling cotton. Generally when he is in the eastern states, he is trying to sell cotton; when in Texas, he generally is buying cotton. The war has caused the company's export business to fall off a great deal, and when the war is over the company should have a large export business. If so, petitioner will probably be in Europe trying to get some of that business.

Petitioner is the only child of Pio Crespi, and he and Pio Crespi control Crespi & Co. He expects eventually to succeed his father as head of the business. The idea behind his going all over the world, getting schooling in the cotton business, is so that he can take his father's place. After the war is over, petitioner expects to run both the export and the domestic phases of the company's business, and to take charge of Crespi & Co.

Petitioner now resides in Charlotte, North Carolina. He went to Charlotte about September 1935, although prior to that time, while working in Dallas, he was accustomed to stopping at the office in Charlotte every year to talk to the agents and salesmen which the company had in the Carolinas. He went to the Carolinas to learn the domestic mill business, after having been on the European end of the business. About a year later he went to Atlanta, Georgia, stayed about a year, and then went back to Charlotte, North Carolina. When he first went to Charlotte, he lived in a furnished apartment. He now lives in a home which he rents, and has been renting since July 1940. He does not own any real property in North Carolina, although he has accumulated some furniture and owns most of the furniture in his home. Part of the furniture came from Dallas, from his father. He does not pay any taxes in North Carolina, and did not file a North Carolina income tax return for last year. He was married in 1935 at Corpus Christi, Texas, to a girl from Dallas, Texas. He has no family portraits or other possessions. He has no banking account at Charlotte, but has one in Dallas, Texas, and one in a bank in New York. He votes at Dallas, Texas, and pays poll tax there. He registered for the draft at Dallas, owns real estate, that is, oil property, in Texas, as a member of the partnership, and owns stocks or securities and keeps the certificates representing them at Dallas in the Crespi & Co. offices. The address in which his securities are registered and to which dividends come is Dallas, Texas. He keeps his personal books at Dallas. In market transactions on cotton futures, for instance, he uses Dallas, Texas, as his address. He is a member of the country club at Charlotte, North Carolina, for purposes of entertaining mill men, and is at that place interested in, and in 1938 realized about $8,700 from, the cotton merchant business of Crespi, Baker & Co., which he and his father control. He carries on his automobile a North Carolina license, but gives Dallas, Texas, as his address in that connection. He feels that Dallas is his home to which he will come back eventually.

Petitioner intends to reside where he can be of the greatest service to Crespi & Co., whether it be Dallas, Charlotte, Atlanta, or any other place. He went to Charlotte, North Carolina, because Charlotte and vicinity is the center of the domestic textile industry in this country. He handles the domestic end of the business and the export trade is handled through the Dallas office. The petitioner determines Crespi & Co. policies regarding domestic business, but that is not true as to export business. His job at this time is building up a domestic mill business. He has been going around calling on the cotton mills. All cotton shippers travel a great deal during their spare time. When petitioner gets to know the cotton millers, he can talk to them

over a long distance telephone from Dallas, if he desires. After a while it will not be necessary for him to remain in the vicinity of the Carolinas. He intends to stay in North Carolina so long as it is necessary to build up the good will of the officials of the textile industry to the extent that he can be able effectively to perform the duties involved in the domestic trade from the Dallas office, and then his present plans are to return to Dallas and conduct the business from the Dallas office. He thinks he has such a good will of the mill men pretty well built up now. As soon as the export business picks up, he expects to return to Dallas.

During the past two years petitioner has been in Dallas three or four times a year. He was there three times between Christmas 1940 and the time of hearing on February 19, 1941. He usually stays from a week to ten days, and stays in his father's home. His wife sometimes returns with him.

About July 1939 petitioner's father wrote to him about coming back to Dallas and his letter in response, in pertinent part, stated:

* * * I know you are anxious for me to return to Dallas and help you in the main office, particularly in the event of war, as I remember your recent comment that you carried the whole burden of business through one war and would dread going it alone through the next one.

But here is the other side of the picture, I feel that my work in the Eastern belt has not yet been completed. I feel that I am really accomplishing something in the selling end, our sales have increased tremendously since I have been here, and there have been no more "Crawley affairs." With me over here we have given a looser rein in the selling and are well lined up for big business. Despite this I don't feel that we can give Wilson a free hand in operating the warehouse, with so much Crespi & Co. cotton going thru there, unless I am here to keep a check on him. Also you know the friction, professional jealousy or whatever you care to call it between Greenville and Charlotte, well I am acting as a buffer between the two and the results can be seen in the increase in sales and harmony that now exists, which after all should qualify me as an ambassador, however I know it would go back to the old status should I leave too soon.

Naturally I would prefer to be home, but I don't feel that my work has been completed here, however I will abide by your decision as to which is the better course. Please let me know your decision at an early date so I can arrange my affairs here accordingly.

The petitioner is a member of the cotton exchanges at Dallas, New York, and New Orleans, and is a director of the cotton exchange at New Orleans.

Where was the petitioner's domicile in 1938? He was born and educated in Texas and for several years thereafter worked in, or in connection with, his father's office in Dallas, and still returns frequently to that office. That his domicile originally was in Texas can not be doubted. That he now resides, and in 1938 resided, in North Carolina is equally plain, and he stated in effect that he

expected to reside wherever the business of Crespi & Co. required. The crux of the question here is, therefore, whether by such residence his domicile was changed to North Carolina. There is a presumption of the correctness of the Commissioner's determination that the petitioner was not during 1938 domiciled in Texas, within the purview of section 53 (b) (1) of the Revenue Act of 1938.[1] Though the statute uses the expression "legal residence", the cases consider the matter as one of domicile. *Samuel W. Weis*, 30 B. T. A. 478; *L. B. Peeples*, 27 B. T. A. 879.

The petitioner in effect contends that he has from birth been domiciled in Texas, that he has always since starting work been a part of the extensive cotton business of his father, which has its center in Dallas, Texas, that as his father's only heir he expects to succeed him as head of that business, and that the evidence shows the temporary character of and reasons for his absence from Texas, involved in his business connections, indicating no change of domicile. The respondent urges in substance that domicile requires residence, that petitioner had no residence in Texas, and therefore no domicile, and that mere intent is not sufficient either to establish or retain domicile.

A domicile once acquired is presumed to continue until it is shown to have changed. *Mitchell* v. *United States*, 21 Wall. 350. Mere absence from a fixed home, however long continued, can not work the change. *Sun Printing & Publishing Association* v. *Edwards*, 194 U. S. 377. However, "residence elsewhere repels the presumption, and casts upon him who denies it to be a domicil of choice, the burden of disproving it." *Ennis* v. *Smith*, 55 U. S. 399. Actual residence is only one circumstance, and the presumption raised thereby is not conclusive. *Thayer* v. *Boston*, 124 Mass. 132. "But mere residence elsewhere will not rebut the presumption as to continuance, unless it is inconsistent with an intent to return to the original domicile." 19 C. J. 433.

We think the residence in North Carolina is not inconsistent with intent to return to Dallas, and that we should not, under all of the facts herein present, give to actual residence the weight desired by respondent in his contention that the petitioner had in 1938 no actual residence in Texas, and his citation of *Texas* v. *Florida*, 306 U. S. 398, and *Pecos & N. T. Railway Co.* v. *Thompson*, 167 S. W. 801 (the latter case involving residence for purposes of venue). It is true

---

[1] SEC. 53. TIME AND PLACE FOR FILING RETURNS.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(b) TO WHOM RETURN MADE.—

(1) INDIVIDUALS.—Returns (other than corporation returns) shall be made to the collector for the district in which is located the legal residence or principal place of business of the person making the return, or, if he has no legal residence or principal place of business in the United States, then to the collector at Baltimore, Maryland.

that taking up a domicile requires taking up residence, yet actual residence is not necessary to retain a domicile once established. "Actual residence is not necessary to retain a domicile once acquired." 19 C. J. 424. It is obvious that under the facts here involved Texas was the domicile of origin of the petitioner. He was born there. It is also clear that there was no such abandonment of domicile as in *Texas* v. *Florida, supra*, where it is said of Green, "After that [i. e., after 1911, twenty-five years before his death, in 1936, the date as to which the question of domicile arose] he was never identified in fact with any place of residence in Texas and there was nothing in his life to connect him with a Texas home other than his frequent statements that his legal residence was in Texas." Here the petitioner continued at all times to be identified with Dallas as his former place of residence, and statements alone are not relied upon, but much corroborative evidence is adduced. We think it unnecessary to repeat the many facts set forth above, which identify the petitioner at all times with Texas and Dallas. Plainly there is scant, if any, evidence here of *animus manendi* as to North Carolina, but practically everything negatives such intent. Temporary residence merely for the purpose of transacting business is not sufficient to constitute a domicile. 19 C. J. 408.

In *Williamson* v. *Osenton*, 232 U. S. 619, it is said:

The essential fact that raises a change of abode to a change of domicil is the absence of any intention to live elsewhere, Story on Conflict of Laws, § 43— or, as Mr. Dicey puts it in his admirable book, "the absence of any present intention of not residing permanently or indefinitely in" the new abode. Conflict of Laws, 2d ed. 111. * * *

Here, however, we find no absence of present intention of not residing permanently or indefinitely in North Carolina. It is affirmatively shown that though the exact time necessary to complete the object in mind in North Carolina was not known, there was definite present intention not to remain there, but to return to Dallas. This is shown, we think, by the whole tenor of the evidence, including a letter written in 1939, rather plainly in due course of business and having no appearance of self-service, which letter states that "I would prefer to be home, but I don't feel that my work has been completed here." That Charlotte was the second important place next to Dallas in the business of Crespi & Co., except in the export business, is not of weight, since both export and import business, headed at Dallas, were the future concern of the petitioner, nor is the fact that at Charlotte the petitioner drew a considerable salary. It was from a company controlled by the petitioner's father and by him, and obviously a connection of the Dallas organization.

The respondent argues that mere indefinite intention can not retain domicile, and cites *Rosenberg* v. *Commissioner*, 37 Fed. (2d) 808. Therein the facts disclose that the state of new abode was "the permanent center of practically all of his personal activities"; while herein it is equally plain that Dallas, Texas, the place of former abode, was such permanent center of activity. Indefinite intent, often called "floating" intention to return to former domicile, without more, of course is not sufficient to establish or retain domicile, but we can not agree that this is a case of such mere "floating" or vague indefinite intention. Nothing in the matter seems more certain than that the petitioner expects to assume the management of the business of which his father is the head, and the constant connection kept by the petitioner with that business and with Dallas, by voting, frequent business trips, paying poll taxes, registering for the draft, keeping a personal bank account (whereas he kept none in Charlotte), indicate to us that there was substantiated intent to maintain the domicile of origin. "A change of abode with present intent to return to the former abode upon the contemplated happening of an event in the indefinite future, as business dispatched, health recovered, employment ended, employer's recall, is not a change of residence or domicile." *United States* v. *Knight*, 291 U. S. 129; affd., 299 Fed. 571. The object in living in, Charlotte has largely been accomplished, and as soon as the export business picks up, the petitioner testified, "I am on my way back here." The intent to return is definite, the time not greatly indefinite. This shows, in our opinion, the necessary retention of domicile in Dallas.

*Rogers Hornsby*, 26 B. T. A. 591, in our opinion does not indicate a different answer here. The petitioner there owned no property in Texas and did in the taxable years own real estate elsewhere, and he lived, at the time of the trial, on a valuable farm outside St. Louis which he had purchased in the year following the taxable years. He paid no taxes on property in Texas, but paid taxes in Missouri. He apparently had not voted in Texas for seven or eight years prior to the taxable years, though he had not voted elsewhere. He had conveyed his Texas home to a divorced wife, and remarried to a resident of St. Louis. Each case depends on facts and intent. They differ here vitally, we think, from those in the *Hornsby* case.

We conclude and hold that the domicile of the petitioner in 1938 was Dallas, Texas.

*Decision will be entered under Rule 50.*