Charles C. Gates, Jr. v. Commissioner.
Gates v. Commissioner
Docket No. 23616.
United States Tax Court
1951 Tax Ct. Memo LEXIS 59; 10 T.C.M. (CCH) 1002; T.C.M. (RIA) 51306; October 24, 1951
Dayton Denious, Esq., 832 Equitable Bldg., Denver, Colo., for the petitioner. Frank M. Cavanaugh, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent has determined a deficiency in income tax for the calendar year 1944 in the amount of $265. The sole question is whether petitioner was domiciled in Louisiana and entitled to report on a community property basis, or was domiciled in Colorado and required to report his income as separate property. Findings of Fact Petitioner is an individual who now resides in Denver, Colorado, in a home he leases from his mother. His income tax returns, both original and amended, for the year 1944 were filed with the collector of internal revenue for the district of Colorado. Before going to Louisiana petitioner's only home was *60 his parents' home in Evergreen, Colorado, about 25 miles from Denver, though they had another dwelling in Honolulu, Hawaii. It has been their custom to live at Honolulu in the winter, and Evergreen in the summer. Evergreen was the family domicile. Petitioner completed his secondary education at Punahou Academy, in Honolulu. The Gates Rubber Company, located at 999 South Broadway, Denver, Colorado, is largely owned by petitioner's family. The company was founded in 1911 by petitioner's father, who is president of the company, and it has grown steadily. Dividends from shares of the company's capital stock held in trust for petitioner accounted for most of petitioner's income in 1944. While in college petitioner expected to become associated with his father in The Gates Rubber Company at some indefinite time in the future. Petitioner wanted to get out and make a place for himself independently, and to acquire a business background and establish his ability, before participating in the management of The Gates Rubber Company. Petitioner graduated from Stanford University with an engineering degree in December, 1942, at which time he was 21 years of age. He made application for employment *61 with the Firestone Rubber Company, and went to Akron, Ohio. At the suggestion of a Firestone official he joined a group then in training to take over operation of a new government-sponsored synthetic rubber plant at Baton Rouge, Louisiana, which plant Firestone expected to operate. After about six weeks of training in Akron petitioner went to Baton Rouge and was employed in the design and engineering department of the plant in March, 1943. The plant was not put under the operation of Firestone as previously expected, but was operated by the Copolymer Corporation. In the summer of 1943 after he had been at Baton Rouge with the Copolymer Corporation for about two months, petitioner personally took a year's lease on a furnished house with ten acres of land. The cost of this lease and living arrangements, which he managed, he shared with three other bachelors until he married his fiancee at her home in Salt Lake City, Utah, in November, 1943, after which time he returned and arranged to take over the balance of the lease alone with his bride. Petitioner and his wife, after renting on a month-to-month basis at the termination of the first year's lease, were in the spring of 1945, by *62 virtue of a sale by the owner, forced to leave, and they rented on a one-year basis another furnished house located at 4210 Claycut Road, Baton Rouge. They had taken to Baton Rouge all their wedding presents, dishes and silver, and all the furniture they owned (a bedroom set), and they substituted these articles for rented furnishings and used them in the regular course of their daily living. While in Louisiana petitioner had only one bank account, a checking account with a Baton Rouge bank. He joined a local country club and contributed to local chapters of national charities. His wife joined a Junior Service League and engaged in civic work in Baton Rouge. She also took a pottery course at Louisiana State University. Petitioner had acquired a junior membership in the Denver Country Club at the time his father joined. While petitioner was in Louisiana, his dues were kept paid by the accounting department of The Gates Rubber Company. Petitioner and his wife left Baton Rouge for a two weeks summer vacation in 1944 and again in 1945, which time was spent visiting their respective parents in Utah and Colorado. They left Louisiana about February, 1946, as the result of a letter from *63 petitioner's father in Honolulu, which requested petitioner to become actively associated with him in the Denver business. Petitioner and his wife went from Baton Rouge to Honolulu where they remained three months, arriving in Colorado in June, 1946. They stayed with petitioner's parents at Evergreen while locating a place to live, and having found a house in Denver moved into it and established their home in Denver in August, 1946. For a number of years prior to 1946 petitioner had relied on one A. W. Ewy, employed as an accountant in the accounting department of The Gates Rubber Company, for preparation and filing of income tax returns. Ewy prepared and filed all state and Federal income tax returns for petitioner for 1943, 1944 and 1945. Neither Ewy nor petitioner was aware of the community property laws of Louisiana until after March, 1945. For each of the calendar years 1943, 1944 and 1945 petitioner made a state income tax return to the State of Louisiana, returning all his income as taxable by that state. He made no state income tax return to any other state for any of these years. His original Federal income tax return for 1943 was filed in Louisiana, and reported all *64 income received by him as his separate property, but he filed an amended return for 1943 in Colorado, giving his father's plant in Denver as his home address. His original Federal income tax return for 1944 reported all income received by him as separate property and this return was filed in Denver. In 1945 petitioner, from discussion with other married couples, learned about the existence of Louisiana's community property law. He then notified Ewy, who filed an amended return for 1944 in the district of Colorado showing a Louisiana residence. Petitioner went to Baton Rouge, Louisiana, to gain experience in the synthetic rubber industry and always had a fixed intention of returning to Colorado, to become associated with The Gates Rubber Company. Opinion The question of where a person is domiciled is essentially one of fact. Petitioner's domicile of origin was Evergreen, Colorado, and our problem is whether the petitioner abandoned this domicile and established a domicile of choice in Baton Rouge, Louisiana. This in turn leads to the narrow determination of what was the intention of the petitioner. To acquire a domicile of choice there must be physical presence in the place *65 where domicile is alleged to have been acquired and the intent to make that place the home of the party. Implicit in this second element is the intention no longer to have a home at the former domicile. (Restatement, Law of Conflicts, section 15). The domicile which a person once has, whether given by law, or acquired through the exercise of choice, continues until another one is gained. Desmare v. United States, 93 U.S. 605. It is our conclusion from all the evidence that while the petitioner intended to reside in Baton Rouge until he had gained experience in the synthetic rubber industry, even though this might be for an indefinite period of time as such, he always had a fixed and definite intention to return to Colorado and become associated with the family corporation. "A change of abode with present intent to return to the former abode upon the contemplated happening of an event in the indefinite future, as business dispatched, health recovered, employment ended, employer's recall, is not a change of residence or domicile." United States v. Knight, 291 Fed. 129; affd., 299 Fed. 571; Pietro Crespi, 44 B.T.A. 670, 676. It follows *66 that petitioner did not abandon his Colorado domicile, nor did he establish a domicile in Louisiana. Decision will be entered for the respondent.