GEORGE D. HAMPTON, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 85753. Filed April 24, 1962.

*George D. Hampton, Jr.*, pro se.
*Malin VanAntwerp, Esq.*, for the respondent.

DRENNEN, *Judge:* Respondent has determined deficiencies in income tax due from petitioner for the taxable years 1956 and 1957 in the respective amounts of $791.48 and $787.16.

The only issue for decision is whether petitioner, a United States citizen residing in Germany and not domiciled in a community property State during the taxable years, may treat, for Federal income tax purposes, one-half of his income as belonging to his wife, a nonresident alien during 1956 and 1957.

### FINDINGS OF FACT.

Some of the facts were stipulated and are so found.

For the calendar years 1956 and 1957 petitioner filed individual income tax returns with the Director of International Operations, Internal Revenue Service, Washington, D.C.

From birth until February 1943 petitioner was domiciled in New Jersey at the residence of his parents. In February 1943 petitioner was inducted into the United States Army. While in the Army he was stationed in Texas from March 1943 until December 1943, and in California from February 1944 until September 1944.

In September 1944 petitioner was sent overseas, reaching Germany in November 1944. Petitioner remained in the Army, stationed in Germany, until April 1946, at which time he was discharged from the Army.

In May 1946 petitioner became a civilian employee of the United States Army in Germany, and resided there until October 1958. He is now and has always been a United States citizen.

Prior to January 1, 1956, petitioner married a German national, and for the period of their marriage prior to 1956 petitioner and his wife resided in Germany but not on a military reservation. From January 1, 1956, until October 1958 they resided at Benjamin Franklin Village, Mannheim, Germany, a United States military reservation.

Petitioner's wife was not a United States citizen during 1956 and 1957.

Petitioner resided continuously in Germany from November 1944 until October 1958. In October 1958 he was reassigned and transferred from Germany to a duty station in Philadelphia, Pennsylvania. Since May 1946, until the present time, petitioner has been continuously a civilian employee of the United States Army.

In November 1953 petitioner purchased real estate at 338 Goldenridge Drive, Levittown, Pennsylvania, for the purpose of providing a home for his parents. Petitioner still owns this property, but has never made it his residence.

From November 1958 until December 1959 petitioner rented his present residence at 66 Sweetgum Road, Levittown, Pennsylvania. In December 1959 he purchased it, and intends to make it his residence until reassigned elsewhere by the Army.

Petitioner has never registered for voting purposes in any State. Petitioner filed his income tax returns for 1955 and earlier years with the collector or director of internal revenue at Baltimore, Maryland. He filed his income tax return for 1958 with the Director of International Operations, Internal Revenue Service, Washington, D.C., and his return for 1959 with the district director of internal revenue at Baltimore, Maryland.

Petitioner attached to each of his Federal income tax returns for 1956 and 1957 a statement explaining that because he was married to a nonresident alien he was "splitting" his income, which consisted solely of salary from the United States Army, and was reporting only one-half of such income as his. In the statement attached to his 1957 return, petitioner further explained that he and his wife had agreed orally that "all property (income) owned or to be acquired by either of us should be community property (income)," and that while he had no legal residence in the United States, he intended to be domiciled in the State of Washington, a community property State, upon his return to this country. Thus he was, he stated, "filing this return for 1957 on a marital community basis," and reporting only one-half of his income.

In the statutory notice of deficiency respondent explained the determination by the following explanation of adjustment:

Income allocated to your wife is taxable to you under Section 63 of the Internal Revenue Code of 1954. You have not established that you were domiciled in a community property state. Your claim to domicile in the state of Washington is based on a future intention to live there and not on an established domicile in a community property state. Accordingly, income earned by you in the year 1956 [and 1957] is taxable to you.

OPINION.

During 1956 and 1957 petitioner, a United States citizen, was a civilian employee of the United States Army in Germany, where he resided with his wife, a nonresident alien. His income consisted solely of a salary paid by the Army. For these 2 taxable years he filed income tax returns reporting therein only one-half of his salary as income, because he considered that one-half of the salary earned by him belonged to his wife since his income was, in his words, "community property."

Respondent determined that petitioner's entire income is taxable to him for each of the 2 years. The deficiencies herein result from this determination. It is, of course, incumbent upon petitioner to demonstrate error in that determination.

Petitioner, in splitting his income and reporting only one-half thereof in each of the 2 years in question, apparently originally relied upon his conclusion that his domicile—although not his residence—was in Washington, a community property State, and that consequently, one-half of his income belonged to his wife. According to the explanation attached to his 1957 return, he concluded that his domicile was in Washington because he intended someday to make that State his permanent home. But he also considered that he and his wife comprised a marital community because they had orally agreed that all income received by either of them was to be community income. He explained that he was observing the rule derived from *Estate of J. Harold Dollar*, 41 B.T.A. 869 (1940).

It appears that petitioner has abandoned the contention that the domicile of his wife and himself in 1956 and 1957 was Washington, a community property State,[1] and the agreed facts show affirmatively that the Hamptons were not domiciled in Washington when they lived in Germany. Petitioner was domiciled in New Jersey before he entered the Army. Even if petitioner, when he worked for the Army in Germany, intended to make the State of Washington his permanent home at some time in the future, this fact would not be sufficient to constitute Washington his domicile. Actual residence may not be required in order to retain domicile, but it is a requisite to establishing domicile; intention alone does not suffice. See *Pietro Crespi*, 44 B.T.A. 670 (1941). It does not appear that petitioner has ever resided in Washington.

Petitioner does contend on brief, as he did originally when he filed his 1957 return, that he had a "community property relationship" with his alien wife, that he is entitled by law and by custom to have

---

[1] Petitioner argues on brief that he may establish a domicile through intent alone, citing no authority, but he also states, "the *question* of *domicile* is not the *basic issue* and need not be determined."

such a relationship, and that no law, Federal or local, prohibits this relationship. In support of this contention he cites on brief *Roscoe* v. *Commissioner*, 215 F. 2d 478 (C.A. 5, 1954); *Chamberlin* v. *Commissioner*, 207 F. 2d 462 (C.A. 6, 1953); *Caldwell* v. *Campbell*, 218 F. 2d 567 (C.A. 5, 1955); *Stearns Magnetic Mfg. Co.* v. *Commissioner*, 208 F. 2d 849 (C.A. 7, 1954); *Estate of J. Harold Dollar, supra*. Presumably, petitioner claims such a relationship with his wife by virtue of an oral agreement to which he alluded in the statement attached to his 1957 return. But he has proffered no evidence to prove either an oral agreement or any other basis for a "community property relationship" between himself and his wife and absent such proof, his argument has no foundation in the record in this proceeding.[2] In any event, it is axiomatic that agreements for the anticipatory assignment of income are ineffective to alter the incidence of Federal income taxation, and we know of no authority—and petitioner cites none—for the proposition that an agreement between a husband and wife to share earnings would, in the absence of some significance of the agreement under the property laws of a community property State where the couple is domiciled, be effective for tax purposes. Cf. *Lucas* v. *Earl*, 281 U.S. 111 (1930). The *Roscoe, Chamberlin, Caldwell*, and *Stearns Magnetic Mfg. Co.* cases are authority for the general rule that the effects of legitimate transactions, having substance as well as form, are not nullified because taxpayers entered into such transactions with the avoidance of income tax as a secondary, or even a primary, motive. They also hold that the fact as well as the form of such bona fide transactions must be clearly proved when their tax effect is in issue. Here, petitioner has not shown even the form of any agreement with his wife.

In the case of *Estate of J. Harold Dollar, supra*, to which petitioner referred in the explanation made a part of his 1957 return, the Board of Tax Appeals was presented with the question of whether certain property owned by a taxpaper, whose domicile was California, had been converted under the laws of California into community property by virtue of an oral agreement between the taxpayer and his wife. By State law, such an agreement was effective to transmute separate property into community property. The issue was whether property was community property under California law as a result of which the income would be taxable one-half to each spouse, not whether an agreement between a taxpayer and his wife is effective to divide income for Federal tax purposes without regard to its effect under local law.

Petitioner's argument with respect to the purported community property relationship with his wife has no merit. Petitioner was not

---

[2] The only evidence offered by petitioner, in addition to the stipulated facts, was some correspondence between himself and the Director of International Operations, which do not mention an agreement. Petitioner did not testify as a witness.

domiciled in a community property State during the years 1956 and 1957.

Petitioner's chief argument is phrased by him on brief as follows:

That there has been an ambiguity in the interpretation and an inequity in the application of the Internal Revenue Code as applied to all citizens of the United States married to nonresident aliens, and that the petitioner is entitled to split his income in half with his alien wife for the tax years 1956 and 1957 for the purpose of Federal income tax.

The ambiguity and inequity referred to arises out of the ruling by respondent in Rev. Rul. 56-269, 1956-1 C.B. 318, that if a husband is domiciled in a community property State, his nonresident alien wife's share of the community income derived from the performance of personal services by the husband for the United States Government in a foreign country does not lose its identity in her hands as income from sources without the United States and would not be subject to Federal income tax, while respondent takes the position in this case that because petitioner was not domiciled in a community property State he must report and pay tax on his entire salary earned in a foreign country.

First, it appears that respondent's ruling mentioned above is a sound interpretation of the law to the facts there involved and is supported by the cases cited therein. See *Paul Cavanagh*, 42 B.T.A. 1037 (1940), affd. 125 F. 2d 366 (C.A. 9, 1942), and *Herbert Marshall*, 41 B.T.A. 1064 (1940). See also, *United States* v. *Malcolm*, 282 U.S. 792 (1931). Second, even if that ruling was an erroneous application of the law to those facts, it would not mean that respondent should compound the error by applying the same ruling to petitioner's situation in order to treat the two taxpayers equally. And third, the facts here are different—petitioner is not a domiciliary of a community property State—and the conclusion reached in the above ruling does not and need not apply to the facts here involved.

Petitioner argues that despite the provision of section 1(b)(3)(C) of the Internal Revenue Code of 1954 [3] that "a taxpayer shall be considered as not married at the close of his taxable year if at any time during the taxable year his spouse is a nonresident alien" respondent has nevertheless recognized the marriage of citizens of community property States to nonresident aliens by permitting them to split their

---

[3] All references are to the Internal Revenue Code of 1954 unless otherwise indicated. Sec. 1(b). RATES OF TAX ON HEADS OF HOUSEHOLDS.—

(1) RATES OF TAX.—A tax is hereby imposed for each taxable year on the taxable income of every individual who is the head of a household. The amount of the tax shall be determined * * *.

(2) DEFINITION OF HEAD OF HOUSEHOLD.—For purposes of this subtitle, an individual shall be considered a head of a household if, and only if, such individual is not married at the close of his taxable year, * * *.

(3) DETERMINATION OF STATUS.—For purposes of this subsection—

*       *       *       *       *       *       *

(C) a taxpayer shall be considered as not married at the close of his taxable year if at any time during the taxable year his spouse is a nonresident alien; * * *

incomes for tax-reporting purposes, and, the argument continues, if it was the legislative intent, in enacting section 1(b) (3) (C), to deny to a United States citizen married to a nonresident alien the right to file joint returns, and thus split their incomes for tax purposes, this intent should be carried out by applying it alike to all citizens regardless of their State of domicile. Petitioner contends that to do otherwise would be discriminatory, would result in a classification of taxpayers not condoned by Congress, and would contravene the due process clause of the Fifth Amendment to the Constitution.

At the outset it will be observed that section 1(b) (3) (C) applies only in determining whether a taxpayer is entitled to be taxed as the head of a household. Recognizing that under section 6013(a) (1) a citizen married to a nonresident alien is not permitted to file a joint return, for reasons set out in the explanation of the purpose for enacting section 51(b) of the Revenue Act of 1938,[4] Congress apparently saw fit, in enacting section 1(b) (3) (C) of the 1954 Code and its predecessor, section 12(c) (4) (C) of the 1939 Code, to permit such a citizen to be taxed under the more favorable rates applicable to the head of a household, which requires that the taxpayer be unmarried.

The basic fallacy in petitioner's argument is his failure to recognize the distinction between the privilege granted a husband and wife under the Internal Revenue laws to split their income for tax purposes by filing a joint return, and the property rights of each spouse in the earnings of the other spouse granted by the property laws of the community property States. The right of husband and wife to file a joint return, and the denial of that right to a citizen married to a nonresident alien, is applicable alike to citizens of common law States and community property States. It is only because the laws of community property States recognize a property right in the wife in one-half of the earnings of her husband, which the courts have found gives the wife the right to treat one-half the income of her husband as her own for tax purposes, see *United States* v. *Malcolm*, *Paul Cavanagh*, and *Herbert Marshall*, all *supra*, that respondent permits a domiciliary of a community property State married to a nonresident alien to exclude one-half of his income from his return, while requiring a domiciliary of a noncommunity property State married to a nonresident alien to include his entire income in his taxable income. Respondent does not apply the revenue laws differently to the two taxpayers. Presumably neither of the above taxpayers would be permitted to file a joint return, sec. 6013(a) (1),

---

[4] H. Rept. No. 1860, 75th Cong., 3d Sess., p. 30 (1938), 1939–1 C.B. (Part 2) 728, 749:

"The subsection also expressly provides that no joint return may be made if either the husband or wife is a nonresident alien. Since nonresident aliens are taxed upon a different basis from residents, it is impossible to compute an aggregate income for the purposes of a joint return if either spouse is a nonresident alien for any portion of the taxable year. Such has been the uniform construction of the existing law."

and both of them would be permitted to report as head of a household if they met all the other requirements of section 1(b) of the Code. If this gives an unfair advantage to the domiciliary of a community property State as claimed by petitioner, petitioner must seek his recourse through Congress.

We find no support for petitioner's claim that the provisions of section 1(b)(3)(C) are ambiguous as applied to the issue presented here. Petitioner claims in his petition that respondent's application of the law is discriminatory and contrary to the basic intent of equal Federal taxation as established in the Constitution of the United States. He also contends in general terms in his brief that respondent's determination is violative of the due process requirements of the Fifth Amendment or at least the basic intent thereof. He has presented no grounds for this contention and we find none. We do not have to exhume many authorities from the time when differences in income tax treatment as between taxpayers, resulting from variances in State law, was an issue of broader significance than in this case, to find that "differences of state law, which may bring a person within or without the category designated by Congress as taxable, may not be read into the Revenue Act to spell out a lack of uniformity." *Poe* v. *Seaborn*, 282 U.S. 101 (1930).

Petitioner has not directed us to any provision of the Internal Revenue Code which would permit him to exclude one-half of his earnings from his taxable income. The earnings were his and are all includible in his gross income under section 61 of the Code. The amounts received were not excludible from his gross income under section 911(a) of the Code, even though they might qualify as amounts received from sources without the United States under section 862 (a)(3) of the Code, because the earnings were paid by the United States or an agency thereof. And petitioner was not entitled to file joint returns with his wife because she was a nonresident alien in 1956 and 1957. Sec. 6013(a)(1). Presumably petitioner was entitled to report his income as the head of a household for each year, which he did and which respondent has recognized in determining the deficiencies. We find no error in respondent's determination.

*Decision will be entered for the respondent.*