CHANNING KING HALL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hall v. Commissioner
Docket No. 6379-75.
United States Tax Court
T.C. Memo 1978-360; 1978 Tax Ct. Memo LEXIS 158; 37 T.C.M. (CCH) 1500; T.C.M. (RIA) 78360; September 12, 1978, Filed *158 P, a U.S. citizen, was a civilian employee of the U.S. Army from 1953 through Dec. 31, 1971. P's wife was a citizen of France. The couple resided in Morocco from 1953 to 1959, in France from 1959 to 1967, and in Germany from 1967 through 1971. Held, P failed to establish that his domicile for 1970 and 1971 was other than Germany, where he lived and worked; under German law, he is not entitled to exclude from gross income one-half of his earnings as belonging to his nonresident alien wife. Channing King Hall, pro se. Joyce H. Errecart, for the respondent. SIMPSON
MEMORANDUM OPINION SIMPSON, Judge: The Commissioner determined deficiencies in the petitioner's Federal income taxes in the amounts of $ 3,507.60 for 1970 and $ 3,889.45 for 1971. The sole issue for decision is whether in 1970 and 1971, the petitioner was domiciled in a community property jurisdiction, so that one-half of his earnings could be attributed to his nonresident alien wife and excluded from his gross income. All of the facts have been stipulated, and those facts are so found. [1]
The petitioner, Channing King Hall, resided at Sant Julia de Loria, Andorra, at the time he filed his petition in this case. He filed individual Federal income tax returns for the calendar years 1970 and 1971. Mr. Hall was born in Newton, Mass., on April 14, 1921. He resided in Pennsylvania in 1942 when he was drafted into the U.S. Army (the Army). In 1945, he served in the Army in *160 France. He went on terminal leave from the Army on February 5, 1946, and obtained his discharge on April 14, 1946. Mr. Hall was married to Georgette Triandafyllidis, a French national, on February 23, 1946, in France, without a contract. From April 15, 1946, to July 5, 1946, he was employed as a civilian employee of the U.S. War Department in France. Mr. Hall remained in France until the end of November 1946. He obtained a French identity card and driver's license. Mr. Hall and his wife came to the United States in 1946 and resided in California at the time he resumed active service in the Army in 1948. He served at duty posts in the United States and subsequently was transferred overseas. He was discharged from the Army in Germany on April 18, 1953. From June 16, 1953, through 1971, Mr. Hall was a civilian employee of the Army. From the beginning of such employment until April 20, 1959, he served in Morocco. He was reassigned from Morocco to France on April 20, 1959. In October of 1964, Mr. Hall and his wife purchased undeveloped real property in France; however, they sold such property in April of 1970. In March of 1967, Mrs. Hall obtained a French identity card. *161 In that year, Mr. Hall received a French driver's license and held a French postal savings account with a balance of 140 francs. Mr. Hall remained in France until June 25, 1967, when he was reassigned to civilian employment with the Army in Germany. He and his wife resided in Germany from that time through 1971. Mr. Hall retired from civilian employment with the Army on December 31, 1971. However, on September 29, 1971, he arranged for the movement of some goods from Germany to Andorra. Mr. Hall has remained a U.S. citizen. His wife has never applied for U.S. citizenship. Mr. Hall did not pay French income tax. On October 20, 1964, Mr. Hall claimed that his official residence since January of 1947 was California. On March 4, 1968, he claimed that during the period between December 1966 and December 1967 he was domiciled in France and Germany. On his Federal income tax returns for the calendar years 1970 and 1971, Mr. Hall claimed that his domicile for such years was in Germany. On his returns for 1970 and 1971, Mr. Hall claimed he was entitled to split income with his wife under the community property laws of Germany[2] or California. In his notice of deficiency, the *162 Commissioner determined that Mr. Hall was not entitled to split income with his wife under the community property laws of any State or other jurisdiction. The sole issue for decision is whether the petitioner is entitled under the community property laws of any jurisdiction to attribute one-half of his earnings to his nonresident alien wife and thereby exclude such amount from his gross income. [3] Resolution of this issue depends upon whether the petitioner was domiciled in a jurisdiction whose community property laws would apply to him. Gates v. Commissioner,199 F. 2d 291 (10th Cir. 1952), affg. a Memorandum Opinion of this Court; Helvering v. Campbell,139 F. 2d 865 (4th Cir. 1944), affg. a Memorandum Opinion of this Court; Commissioner v. Cavanagh,125 F. 2d 366 (9th Cir. 1942), affg. 42 B.T.A. 1037 (1940); Blumenthal v. Commissioner,60 F. 2d 715 (2d Cir. 1932), affg. 15 B.T.A. 1394 (1929), cert. denied 287 U.S. 662 (1932); Santiago v. Commissioner,61 T.C. 53 (1973), *163 affd. without opinion 510 F. 2d 223 (D.C. Cir. 1975); Taira v. Commissioner,51 T.C. 662 (1969); see Restatement, Conflict of Laws 2d, sec. 258 (1971). The petitioner now claims that he was domiciled in France during the years at issue, and that French community property law is applicable to him. In the alternative, the petitioner claims domicile in either California or Andorra. The Commissioner argues that the petitioner was domiciled in Germany during the years at issue. He further argues that, even if the Court finds that the petitioner was domiciled in France, French community property law does not apply to him. The essential elements of domicile are residence in fact, coupledwith the intention of making the place of residence one's *164 home. Texas v. Florida,306 U.S. 398, 424 (1939); Gates v. Commissioner,supra at 294; Restatement, Conflict of Laws 2d, secs. 14-16, 18 (1971). A domicile, once acquired, is not lost merely by virtue of a change in residence, if such change is accompanied by a persisting intent to return to the previously established domicile. However, the fact that there exists some floating intention of returning to the old domicile does not prevent a new domicile from being acquired in the meantime. District of Columbia v. Murphy,314 U.S. 441, 456 (1941); Texas v. Florida,supra at 425-427; Helvering v. Campbell,supra at 869. The question of domicile is one of fact, to be determined on the basis of all the evidence. Generally, the place where a person lives is taken to be his domicile until facts are adduced to establish otherwise. District of Columbia v. Murphy,supra at 455; Kastel v. Commissioner,136 F. 2d 530, 533 n. 2 (5th Cir. 1943). After reviewing all of the evidence in this case, it is clear that the petitioner's *165 residence in 1970 and 1971 was in Germany, and he has failed to establish that he was domiciled in any jurisdiction other than Germany, his place of residence. [4]
*166 In determining a taxpayer's domicile, his declarations of intention may be considered. District of Columbia v. Murphy,314 U.S. at 456; Texas v. Florida,306 U.S. at 425. However, in this case, the petitioner's declarations have been contradictory. He now assets that throughout his marriage, his intention to return to France was manifested. He characterizes all absences from France as "involuntary." Yet, in 1964, he claimed that his domicile was in California, and in 1970 and 1971, he asserted on his tax returns that he was domiciled in Germany. Moreover, his declarations of intent are not dispositive, particularly when they are in conflict with other evidence. District of Columbia v. Murphy,314 U.S. at 456; Texas v. Florida,306 U.S. at 425. On this record, the petitioner has failed to show that he had established substantial ties to any one jurisdiction. Rather, it appears that he changed his domicile whenever his employment dictated such a move. His present claim that he continued to be domiciled in France in 1970 and 1971, despite the fact that he had resided in Germany since 1967, is based primarily *167 upon the facts that he obtained a French driver's license in 1967, that he kept open a postal savings account in France, that he owned real property in France, and that his wife remained a French citizen. However, the balance in the petitioner's French postal savings account in 1967, only 140 francs, was not a significant amount, and he has not shown that he continued to hold such account in 1970 and 1971. Moreover, in 1970, he and his wife sold the real property situated in France. [5] Similarly, the petitioner has not shown the conditions under which he obtained the French driver's license or whether he continued to hold such license in 1970 and 1971. Finally, the fact that Mrs. Hall remained a French national is not persuasive evidence in this case, since, during their more than 30 years of marriage, she has continued to live with Mr. Hall wherever he worked and has resided in France relatively little. In summary, the evidence does not establish such substantial ties to France to persuade us that the petitioner remained domiciled there, rather than in Germany, where he lived and worked. The petitioner may have had a sentimental attachment to France, but such a sentimental attachment *168 is not sufficient to establish France as his domicile. District of Columbia v. Murphy,314 U.S. at 456. We also are not persuaded by the petitioner's claims of domicile in California or Andorra. *169 The petitioner left California in 1948, and there is absolutely no evidence that he intended to return there. It may be that, during the years at issue, he formed the intent to make Andorra his permanent home upon his retirement. Yet, intention alone is not sufficient to establish domicile.Actual residence is a requisite to establishing domicile; from the record, it does not appear that the petitioner ever resided in Andorra prior to his retirement from civilian employment with the Army on December 31, 1971. Hampton v. Commissioner,38 T.C. 131, 133 (1962). The petitioner also argues that the Commissioner audited his returns for 1963 and 1967, accepted his claim of domicile in France for such years, and approved the exclusion from gross income of one-half of his earnings on the ground that such amount belonged to his wife under French law. However, the facts in those years were substantially different from those during the taxable years at issue, in that the petitioner resided in France during the prior years. In any event, the Commissioner is not bound by a determination made pursuant to an audit of a prior year's return. Fruehauf Trailer Co. v. Commissioner,42 T.C. 83, 99 (1964), *170 affd. 356 F. 2d 975 (6th Cir. 1966), cert. denied 385 U.S. 822 (1966). Having determined that the petitioner was domiciled in Germany during the years at issue, we must determine his status under German law. The German Civil Code, Sixth Title, section 1363 provides that a "community of accrued gains" is the prevailing matrimonial regime where the spouses do not provide otherwise by marriage contract. However, the term may be misleading, for the system is not one of community property. Rather, German law provides for a system of separate property during the existence of the marriage, with a claim for equalization of gains upon termination of the matrimonial regime. J. Leyser, "'Equality of the Spouses' under the New German Law," 7 Am. J. Comp. L. 276, 279-280 (1968); W. Muller-Freienfels, "Family Law and the Law of Succession in Germany," 16 Intl. & Comp. L.Q. 409, 426 (1967); compare Poe v. Seaborn,282 U.S. 101 (1930). Moreover, article 15(2) of the Introductory Act to the German Civil Code provides that if foreign spouses have their residence in Germany, the laws of the State of which the husband was a national *171 at the time of the entry into the marriage determines marital property rights, in the absence of a marriage contract. The petitioner was a U.S. citizen at the time of his marriage. There is no Federal law of community property ( Santiago v. Commissioner,61 T.C. at 59); nor are Massachusetts or Pennsylvania, the only States in which, on the basis of this record, the petitioner had resided prior to his marriage. Willcox v. Penn Mut. Life Ins. Co.,357 Pa. 581, 55 A. 2d 521 (1947). We believe that a German court would not look to the law of France, which was not the State of the petitioner's nationality, or to the law of California, a State to which he did not move until several months after his marriage, to determine that the petitioner's earnings were community property. The petitioner cites no authority to the contrary. The petitioner also claims that certan amounts were assessed and paid prior to the issuance of the notice of deficiency in this case. To give the petitioner credit for any such assessments, Decision will be entered under Rule 155. Footnotes
1. There was a hearing at which the Commissioner called an expert witness, but his testimony consisted only of expressing his expert views concerning French law.↩
2. Mr. Hall appears to have abandoned any claim that Germany is a community property jurisdiction.↩
3. If income earned by the personal services of Mr. Hall while working for the U.S. Government in Germany was attributable to his wife by reason of community property law, such income would be treated as income from sources without the United States and would not be subject to Federal income tax. Hampton v. Commissioner,38 T.C. 131, 135↩ (1962).
4. At the time of the trial of this case, the petitioner was in Europe, and he elected not to return to the United States for purposes of the trial and not to engage counsel to represent him. His absence made it difficult for him to carry his burden of proof. To assist the petitioner, the Court arranged for the parties to enter into a stipulation of all the facts with respect to which there was no genuine controversy. To allow the petitioner the greatest opportunity to present his case under such circumstances, the Court admitted many of his letters written to the IRS solely for the purpose of establishing that such letters had in fact been written; the letters were not admitted generally for the truth of the statements contained therein, since such statements were not made under oath and since the Commissioner had no opportunity to cross examine the petitioner with respect to them. Rule 802, Fed. R. Evid. However, at the request of the Commissioner, we have relied upon some of the statements contained in those letters in making our findings of fact, because the statements constituted admissions by a party-opponent. Rule 801(d)(2), Fed. R. Evid.↩
5. On schedule D of his Federal income tax return for 1970, the petitioner reported only one-half of the gain from the sale of such property. In support of this treatment, he stated that the land was situated in France, was owned jointly with his wife, and that her share of the gain was not subject to U.S. taxation. His characterization of the transaction was accepted on audit. The petitioner argues that the Commissioner's treatment of this item on audit amounts to a concession that the petitioner is entitled to exclude from gross income one-half of his earnings as belonging to his wife under the community property laws of France. His position is without merit. The Commissioner conceded nothing; he merely chose not to challenge this item on audit. Moreover, different rules apply in determining ownership of real property, as opposed to personal property. See Restatement, Conflict of Laws 2d, sec. 223 comment a↩. (1971).